IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. AP-74,931





RODRIGO HERNANDEZ, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM BEXAR COUNTY





 Johnson, J., delivered the unanimous opinion of the Court.


O P I N I O N



 Appellant was charged with capital murder by an indictment that alleged, in separate
paragraphs, murder in the course of committing and attempting to commit aggravated sexual assault
and murder in the course of committing and attempting to commit kidnapping. (1) A jury convicted
appellant of capital murder, and its answers to the special issues resulted in a sentence of death. On
direct appeal, appellant raises five points of error.

 The record reflects that in the early morning hours of February 18, 1994, the complainant was
re-stocking snack products at a San Antonio grocery store from the storage bin in back of the store. 
While working at the storage bin, the complainant was attacked, sexually assaulted, and strangled
by appellant. The offense remained unsolved until 2002 when the results of DNA testing of
evidence that had been collected from the crime scene, and that had been entered into a national
database, matched the results of DNA testing on a sample that had been collected from appellant by
the State of Michigan and entered into the same national database. After the reported match, another
sample from appellant was tested, and the DNA pattern was found to match the DNA pattern from
the sample collected from the crime scene. Appellant's written statement, which detailed his actions
in attacking, sexually assaulting and killing the complainant, was also introduced into evidence.

 The record also reflects that appellant had been convicted of multiple criminal offenses in
Michigan. In 1992, appellant had been placed on probation for burglarizing a sporting goods store;
however, he had committed numerous violations of the conditions of that probation. As a "youthful
offender" facing sentencing for his first felony, he had been granted probation for burglarizing a
home, but did not successfully complete the probation and was sentenced to jail. (2) He had also been
convicted of felony assault with intent to do great bodily harm, indecent exposure, and misdemeanor
malicious destruction of property and engaging in an illegal gambling business. A former high-school girlfriend testified that appellant had assaulted her. 

 At trial, appellant presented testimony from a court-appointed psychiatrist and from a
licensed social worker. The psychiatrist testified about pervasive conditions during appellant's
upbringing, including social conflicts and discord, substance abuse, incarceration of family members,
and mental illness. He also testified about environmental risk factors that appellant faced. The
psychiatrist pointed out that his CT scan of appellant's head revealed the presence of a bullet in the
left frontal bone of his skull, but conceded that the injury had occurred after this offense. He also
pointed out that appellant had been twenty years old in 1994 and was thirty at the time of trial, and
offered his opinion that there had been some maturation and some indication that appellant's
behavior had become less anti-social. He also noted that appellant's abuse of multiple substances
had ended and was not likely to recur in an incarcerated setting and that the two rule violations that
appellant had committed while incarcerated had been minor and had not disrupted the penal facility
or in any way created violence.

 Appellant also presented testimony from a licensed social worker who had prepared a social
report. Her testimony was based upon interviews with appellant and his family members and a
review of appellant's school, jail, and prison records. The social worker opined that appellant does
well in a highly structured setting, such as incarceration. The state did not present psychiatric or
psychological testimony. 

 Appellant's point of error one alleges that there was insufficient evidence to support the
jury's finding that appellant will be a continuing danger to society because the evidence showed that
he had not committed a violent offense "in years" and had never committed a violent rules infraction
during his several incarcerations. Appellant argues that, of those people convicted of capital murder,
"the death penalty is reserved for those few who would continue to be dangerous even after being
removed from free society [and he] is not such a person." He asserts that the evidence at trial did
not show that he is likely to commit criminal acts of violence while incarcerated for the next forty
years or more. Appellant also points out that "[t]his appeared to be a crime of impulse, not long in
planning, when [he] was very young and very intoxicated on alcohol and marijuana. Both these
factors tend to disprove that [he] will be a future danger, since [he is] no longer young and no longer
has access to drugs and alcohol." Appellant also suggests that "[b]y the time of trial, [he] was not
the same angry young man who had committed the offense."

 The state argues that the evidence is legally sufficient to support the jury's finding on future
dangerousness. It discusses categories of evidence that were presented at trial and concludes that
"[g]iven all the facts in the instant offense, [a]ppellant's character traits, and the nature and number
of the other extraneous acts shown, a rational jury could reasonably have concluded that [a]ppellant
would be a continuing threat to society."

 In reviewing the sufficiency of the evidence to support an affirmative finding to the future
dangerousness special issue, we review the evidence in a light most favorable to the jury's verdict
to determine whether any rational trier of fact could have concluded beyond a reasonable doubt that
there is a probability that the defendant would commit future criminal acts of violence that would
constitute a continuing threat to society. Russeau v. State, 171 S.W.3d 871, 878 (Tex. Crim. App.
2005)(citing Tex. Code Crim. Proc. Art. 37.071, § 2(b)(1)). "We have enumerated a non-exclusive
list of factors that the jury may consider in determining whether a defendant constitutes a continuing
threat to society. . .." Smith v. State, 74 S.W.3d 868, 870 (Tex. Crim. App. 2002)(citing Keeton v.
State, 724 S.W.2d 58, 61 (Tex. Crim. App. 1987)). These factors include:

 1) the circumstances of the capital offense, including the defendant's state of mind
and whether he was acting alone or with other parties;

 

 2) the calculated nature of the defendant's acts;

 

 3) the forethought and deliberateness exhibited in the crime's commission;

 

 4) the existence of a prior criminal record and the severity of the prior crimes;

 

 5) the defendant's age and personal circumstances at the time of the offense;

 

 6) whether the defendant was acting under duress or the domination of another at the
time of the offense;

 

 7) psychiatric evidence; and

 

 8) character evidence.


Id. In its determination of the future-dangerousness special issue, a jury is entitled to consider all
of the evidence presented at both the guilt and punishment phases of the trial. The circumstances
of the offense itself, if severe enough, may be sufficient to support an affirmative finding to that
special issue. Conner v. State, 67 S.W.3d 192, 199 (Tex. Crim. App. 2001); Miniel v. State, 831
S.W.2d 310, 322 (Tex. Crim. App. 1992). "If, given all of the evidence, a rational jury would have
necessarily entertained a reasonable doubt as to the probability of appellant's future dangerousness,
we must reform the trial court's judgment to reflect a sentence of imprisonment for life." Garcia v.
State, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001).

 After reviewing the evidence presented in the guilt and punishment phases, we conclude that
there was sufficient evidence to support the jury's finding that there was a probability that appellant
would commit criminal acts of violence that would be a continuing threat to society. Brooks v. State,
990 S.W.2d 278, 285 (Tex. Crim. App.), cert. denied, 528 U.S. 956 (1999). We overrule point
number one.

 Point of error two claims that "[a]ppellant's motion to preclude the death penalty should have
been granted [because t]he factors that made this case 'death-worthy' should have been passed on
and specified by a grand jury, rather than allowing the state unfettered discretion to seek the death
penalty or not." Appellant acknowledges that his motion did not raise that point, but rather argued
that a fact that increases the penalty for a crime beyond the statutory maximum must be alleged in
the indictment and proved to the jury beyond a reasonable doubt, as announced in Apprendi v. New
Jersey, 530 U.S. 466 (2000). (3)

 Appellant also argues that "[a] death sentence cannot be given unless other facts are found
after the guilty verdict . . . [and that] those facts are elements of the offense of capital murder . . . and
should have to be pled in the indictment." He points to the United States Supreme Court's opinion
in Blakely v. Washington, 542 U.S. 296 (2004), which held that a trial court's sentencing to a term
in excess of the statutory maximum of the standard range for the offense was unconstitutional when
the basis for the excess in sentencing was a finding by the trial judge that was neither admitted by
the defendant nor found by a jury. While that may be true, by Texas statute, the jury is charged with
deciding two special issues. Its answers to those issues determine the sentence that will be assessed
by the trial court; the trial court has no discretion to assess a different sentence.

 Appellant also argues that "the maximum punishment is that which can be imposed without
any additional post-guilty-verdict fact-finding." (Emphasis in original.) This is contrary to the plain
language of Article 37.071, which states that, when the state is seeking the death penalty, there are
two possible sentences: life in prison or death. Thus, the prescribed statutory maximum punishment,
without or without additional findings, is death.

 Appellant further complains that the indictment in this case did not allege the special issues. 
 He argues that he not only has the right to have a jury find the additional facts that result in a death
sentence, but that he also has a right to notice in the indictment that the state will seek such findings.
In Rayford v. State, 125 S.W.3d 521, 533 (Tex. Crim. App. 2003), cert. denied, 543 U.S. 823 (2004),
we discussed a claim that Apprendi required the special issues to be plead in the capital-murder
indictment and pointed out that Apprendi does not compel the state to allege the special issues in the
indictment. Id. More recently, we have held that neither Apprendi nor Ring v. Arizona, 536 U.S.
584 (2002), require that the special issues be alleged in the indictment. Russeau v. State, 171 S.W.3d
at 885-86. Nor can we find any such requirement in Blakely. We have also said, "A defendant
indicted for capital murder is effectively put on notice that the special issues under Article 37.071
will be raised, so such procedural provisions need not be alleged in the indictment." Moore v. State,
969 S.W.2d 4, 13 (Tex. Crim. App. 1998). We overrule point two.

 Point of error three asserts that the mitigation special issue is unconstitutional because it does
not have a burden of proof, thus allowing the jury to give no effect to mitigating evidence. Point of
error four asserts that the mitigation special issue is unconstitutional "because it does not impose a
burden of proof on the state's evidence that is offered as 'anti-mitigating' evidence." Appellant
acknowledges that this Court has rejected this argument many times. He suggests that the lack of
a burden of proof allows each juror to create his or her own burden of proof and that individual
jurors could choose to apply an impossible burden to the defense evidence. Appellant argues that,
given the lack of instruction on burden of proof, jurors were free to disregard his mitigating evidence
altogether, (4) while the jurors must consider mitigating evidence in order for a death-penalty scheme
to be constitutional. He also suggests that the lack of a burden of proof on victim-impact "anti-mitigating" evidence, offered by the state to rebut his mitigating evidence, permits jurors to accept
such evidence without a standard for acceptance.

 We have rejected the claim that the mitigation special issue is unconstitutional because it
omits a burden of proof. Resendez v. State, 112 S.W.3d 541, 549 (Tex. Crim. App. 2003). See also
Paredes v. State, 129 S.W.3d 530, 541 (Tex. Crim. App. 2004); Prystash v. State, 3 S.W.3d 522, 535
(Tex. Crim. App. 1999). Appellant's arguments do not persuade us to overturn our prior rejection
of this claim. Points of error three and four are overruled.

 In point of error five, appellant asserts that the trial court should have granted appellant's
motion to declare the "10-12 rule" unconstitutional because it violates the Sixth and Eighth
Amendments to the United States Constitution. The trial court denied appellant's "Motion to
Declare the '10-12 Rule' Unconstitutional," and instead instructed the jury in accordance with Tex.
Code Crim. Proc. Art. 37.071, § 2(d)(f). (5) Appellant argues that the "10-12 rule" instruction
"misleads juries and puts unconstitutional pressure on jurors who want to vote for life to change their
votes in order to achieve a unanimous vote" and "deprives [him] of effective assistance of counsel,
by not allowing his attorneys to inform the jurors of the effect of their individual votes."

 Appellant acknowledges that this Court has overruled this claim many times. See, e.g.,
Resendez v. State, 112 S.W.3d at 548-49. Appellant does not persuade us to overturn our rejection
of this Eighth Amendment claim. In his brief, appellant failed to argue or show that his trial
counsel's representation fell below an objective standard of reasonableness and that such deficiency
prejudiced him; thus he fails to present his Sixth Amendment claim of ineffective assistance of
counsel within the well-established parameters of Strickland v. Washington, 466 U.S. 668 (1984). 
As to this claim, appellant's issue is inadequately briefed. See Tex. R. App. P. 38.1 (e)-(h). Point
of error five is overruled.

 We affirm the judgment of the trial court.

 Johnson, J.


Delivered: February 15, 2006

Do not publish
1. The indictment allegations of the two separate paragraphs were not listed in the conjunctive or disjunctive,
but rather the two paragraphs were listed consecutively as "Paragraph A" and "Paragraph B" without any connector.
2. The record reflects that this offense occurred in July of 1990, a few weeks after appellant had turned
seventeen years old.
3. We observe that Apprendi is predicated on submission of aggravating factors to a petit jury.
4. We observe that failure to find mitigation is not conclusive evidence that the jury did not consider the
evidence; a jury may consider defense mitigation evidence and then choose to disbelieve it and thus disregard it. 
5. Appellant complains about the jury charge instructions which stated,


 The jury may not answer the first issue "Yes" unless there is unanimous agreement of the
individual jurors upon that answer.


 The jury may not answer the first issue "No" unless ten or more jurors agree upon that answer.


* * *



 The jury may not answer the second issue "No" unless there is unanimous agreement of the
individual jurors upon that answer.


 The [j]ury may not answer the second issue "Yes" unless ten or more jurors agree upon that
answer.