Angel Maturino RESENDIZ a/k/a
Rafael Resendez–Ramirez,

v.

The STATE of Texas.

No. 73849.

Court of Criminal Appeals of Texas,
En Banc.

May 21, 2003.

Dissenting Opinion as Amended
June 18, 2003.

Rehearing Denied Sept. 10, 2003.

Robert A. Norrow, Spring, for Appellant.

Alan Curry, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which PRICE, KEASLER, HERVEY, HOLCOMB, and COCHRAN, J.J., joined.

On May 18, 2000, appellant was convicted of capital murder. TEX. PENAL CODE ANN. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071 § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appel-

lant raises sixteen points of error. We affirm.

In his third point of error, appellant claims the evidence is insufficient to support the jury's finding that he would be a continuing threat to society. In reviewing the sufficiency of the evidence at punishment, this Court looks at the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have concluded beyond a reasonable doubt that appellant would probably commit criminal acts of violence that would constitute a continuing threat to society. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Allridge v. State,* 850 S.W.2d 471, 487 (Tex.Crim. App.1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993).

Appellant was convicted of the capital murder of Dr. Claudia Benton. The State presented evidence that in December of 1998, appellant unlawfully entered Benton's home and brutally stabbed her to death. Additional evidence showed that appellant attempted to sexually assault Benton.

At punishment, the jury heard evidence of numerous other murders committed by appellant. Holly Dunn testified that in August of 1997, appellant approached her and Christopher Maier near some railroad tracks in Lexington, Kentucky. Appellant robbed Dunn and Maier. He then bound Maier's hands and feet and gagged him. Appellant picked up a large object and beat Maier in the head with it, crushing his skull. After murdering Maier, appellant sexually assaulted Dunn. He then hit her in the head with a large object and left the scene. Dunn survived, but suffered multi-

---

1. Unless otherwise indicated all future references to articles refer to the Texas Code of Criminal Procedure.

ple facial fractures and the trauma of the sexual assault.

In October of 1998, appellant unlawfully entered the home of 87–year–old Leafie Mason in Hughes Springs, Texas. Appellant killed Mason by hitting her in the head with an iron. In May of 1999, appellant traveled to Weimar, Texas, and beat Skip and Karen Sirnic to death with a sledge hammer while they slept in their home. He also sexually assaulted Karen Sirnic. In June of 1999, appellant unlawfully entered Noemi Dominguez's home, sexually assaulted her, and killed her with a pickax. Appellant stole Dominguez's car and traveled to Schulenberg, Texas, where he killed 73–year–old Josephine Konvicka with the same pickax used on Dominguez. Appellant left the pickax embedded in Konvicka's head. Also in June of 1999, appellant unlawfully entered 80–year–old George Morber's home in Gorham, Illinois. Morber's daughter, Carolyn Frederick, was with Morber when appellant broke in. Appellant tied Morber to a chair and shot him in the back of the head with a shotgun. Appellant then sexually assaulted Frederick and struck her in the head with the shotgun with such force that the shotgun broke into two pieces. Neither Morber nor Frederick survived.

The facts of the instant case and appellant's history permit a rational juror to conclude that appellant would continue to be a threat to society. Accordingly, we hold the evidence legally sufficient to support the jury's affirmative answer to the future dangerousness issue. *Jackson,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Allridge,* 850 S.W.2d at 487. Appellant's third point of error is overruled.

■ In his first point of error, appellant claims he was denied a fair trial when the trial court refused to admit crime scene photographs relating to extraneous offenses committed by appellant. In his

second point of error, appellant argues the trial court abused its discretion in excluding the photographs because the probative value of the photographs was not outweighed by "any valid justification."

At the guilt phase of trial, Dr. Bruce Cohen testified for the defense that he believed appellant was insane at the time he committed the capital murder in this case. He testified that he relied on various interviews, letters, records, and reports, as well as crime scene photographs of six other murders committed by appellant in forming his opinion. On direct examination, Cohen was shown the crime scene photographs and was asked to describe to the jury what the photographs depicted. The defense then offered the photographs into evidence. The State objected pursuant to Rule of Evidence 705(d) that the photographs were not relevant simply because Cohen relied upon them to form his opinion. Specifically, the State argued that the photographs were not relevant because the question in this case was whether appellant was insane at the time he committed Benton's murder, not the murders depicted in the photographs. The trial court sustained the State's objection.

■ This Court reviews the trial court's ruling under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Salazar v. State,* 38 S.W.3d 141, 151 (Tex.Crim.App.), *cert. denied,* 534 U.S. 855, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001); *Moreno v. State,* 22 S.W.3d 482, 487 (Tex.Crim.App.1999). Rule 705(d) instructs that when the underlying facts or data used by an expert to form his opinion are inadmissible, the court shall exclude the underlying facts or data if the danger that they will be used "for a purpose other than as explanation or support for the expert's opinion outweighs

their value as explanation or support or are unfairly prejudicial." Tex.R. Evid. 705(d).

When the trial judge ruled the photographs inadmissible, he stated, "To see the photographs will not be any assistance to the jury, so I'm going to sustain the objection." Later in the guilt phase of trial, the defense attempted to admit the photographs again. The trial court sustained the State's objection and related that, "the only purpose for which they [the jurors] could consider the photographs was for the purpose of assessing the validity of the doctor's opinions and, quite frankly, they might consider it for, uhm, other purposes."

The trial court ruled that the crime scene photos were not relevant because they did not depict the crime scene where Benton was killed, thus they were inadmissible. Tex.R. Evid. 402. The court then conducted the balancing test for inadmissible evidence under Rule 705(d) and determined that the photographs could have been used for improper purposes. The court also gave an alternative theory for excluding the photographs, even if they were relevant, stating: "But relevant evidence may still be excluded by the court under Rule 403. If, uhm, it's, you know, cumulative, you know, needless delay, confusion of the issues, and basically it's under that rule as well."

Under Rule 401, evidence is relevant if it has the tendency to make the existence of any fact that is of consequence to the determination of the case more or less probable than it would be without the evidence. The photographs in this case were relevant because they go to the issue of appellant's sanity. Viewing multiple photographs of various crime scenes may make the jury more likely to find that no "normal" person could commit such gruesome acts, and thus find that appellant is mentally ill or "crazy." However, as stated by the trial court, under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Evidence may confuse or mislead the jury if it distracts the jury from the main issues in the case or tends to focus the jury's attention on facts tangential to the case before them. The photographs in question were likely to distract the jury from the facts of the crime charged and focus their attention on other crime scenes. While the photographs were relevant to the issue of appellant's sanity, merely viewing the photographs would not necessarily prove that appellant was *legally* insane, therefore their probative value was limited. Additionally, viewing the other crime scenes may have led to confusion regarding the difference between appellant being "crazy" and the issue of legal insanity as defined in Texas Penal Code Section 8.01.[2] While gruesome and shocking photographs depicting other crime scenes may convince the jury that appellant has committed acts unthinkable to most "normal" people, this does not mean that, at the time of the Benton offense, appellant did not know that his conduct was wrong as

---

2. Section 8.01 of the Texas Penal Code states that:

(a)It is an affirmative defense to prosecution that, *at the time of the conduct charged,* the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong.

(b) *The term "mental disease or defect" does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct* (emphasis added).

required under Section 8.01(a). Additionally, Section 8.01(b) specifically states that abnormality manifested by repeated criminal conduct, such as the multiple murders depicted in the photographs, is not to be considered a mental disease or defect that negates the responsibility of appellant for the charged offense.

Because the danger that the photographs would confuse or mislead the jury outweighs their probative value, the trial court did not abuse its discretion in excluding these particular photographs. The trial court's alternative theory for the exclusion of the photographs under Rule 403 was correct. Appellant's first and second points of error are overruled.

In his fourth point of error, appellant contends the future dangerousness special issue was unconstitutional because that issue was not susceptible to proof beyond a reasonable doubt. In other words, appellant argues that in the capital punishment context, jurors apply a higher standard than proof beyond a reasonable doubt because they will tolerate virtually no risk in assessing future danger.

■ The jury was properly instructed on the burden of proof beyond a reasonable doubt. We presume the jury follows the trial court's instructions. *Colburn v. State,* 966 S.W.2d 511, 520 (Tex.Crim.App. 1998). Appellant presents no evidence to rebut this presumption. Appellant's fourth point of error is overruled.

In his fifth point of error, appellant argues that the trial court's failure to provide a definition of 'society' in the special issue on future dangerousness resulted in appellant's death sentence in violation of the Eighth and Fourteenth Amendments of the United States Constitution. We have previously rejected this argument. *McDuff v. State,* 939 S.W.2d 607, 620 (Tex. Crim.App.), *cert. denied,* 522 U.S. 844, 118

S.Ct. 125, 139 L.Ed.2d 75 (1997). Appellant's fifth point of error is overruled.

■ In his sixth point of error, appellant claims the trial court erred in admitting the expert testimony of FBI Special Agent Alan Brantley because his testimony was not shown to be reliable. Appellant did not object to the reliability of Brantley's testimony at trial. Therefore, he has not preserved error for our review. Tex.R.App. P. 33.1.

■ Appellant also contends that Brantley's testimony should not have been admitted because it was not relevant. Appellant made a relevancy objection at trial. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. We review the trial court's decision to admit evidence under an abuse of discretion standard. *Salazar,* 38 S.W.3d at 151; *Moreno,* 22 S.W.3d at 487. We will reverse the trial judge's decision only if it is outside the zone of reasonable disagreement. *Id.*

The State called Brantley to rebut appellant's insanity defense. Brantley testified that in June of 1999, he was contacted by the Houston Division of the FBI to consult with FBI agents, local police officers, and state law enforcement officials regarding this case. He visited several crime scenes in Texas which were later connected to appellant. He also reviewed appellant's medical records, witness statements, letters written by appellant, and interviews with law enforcement. Based on these documents, his tour of the crime scenes, his education as a clinical psychologist, and his many years of experience, Brantley formed the opinion that appellant is an "organized sexual serial killer" who is "geographically mobile." Brantley described an organized sexual serial killer as

an offender who committed "well-planned, well-orchestrated" multiple murders with a sexual element. In this case, appellant displayed the characteristics of an organized sexual serial killer by committing murders at night, using rear locations to enter homes, committing murders near railroad tracks, and selecting random victims. He displayed the characteristics of a geographically mobile offender by traveling nationally and internationally. Brantley testified that all of those characteristics demonstrated an effort to elude law enforcement. Brantley related that as a geographically mobile organized sexual serial killer, appellant displayed criminal sophistication rather than psychotic behavior.

Brantley's testimony was relevant to rebut appellant's defensive theory of insanity. As such, the trial court did not abuse its discretion in admitting the testimony.

Appellant argues further that even if Brantley's testimony was relevant, it should not have been admitted at trial because any probative value of the testimony was substantially outweighed by unfair prejudice pursuant to Texas Rule of Evidence 403. At trial, appellant made only one Rule 403 objection to Brantley's testimony:

> [THE STATE]: Is there any—is the fact that the type of people that became victims of his crimes any indication about trying to avoid detection?
>
> [BRANTLEY]: Well, that's another classic, uhm, example or element of the organized offender. They select victims that are strangers, so this random victim selection is intent on eluding law enforcement authority better, because when you consider basic law enforcement homicide investigative techniques they generally start with the victim's inner circle of friends, family, and associates in an attempt to develop a suspect pool, if you will.
>
> [THE DEFENSE]: Excuse me, sir. At this time, judge, we're going to object to this. It's speculative and irrelevant to this case at hand.
>
> [THE COURT]: Overruled.
>
> [THE DEFENSE]: *And, for the record,* judge, we object. If the court believes it relevant, that its prejudicial value outweighs any probative value, and that our further objection is that none of this is from this witness's personal knowledge.
>
> [THE COURT]: Overruled.

Appellant objected only to Brantley's testimony regarding the random selection of victims. On appeal, however, appellant argues that Brantley's testimony was unfairly prejudicial because profile evidence is inherently unreliable and because Brantley did not interview appellant.[3] Appellant's trial objection does not comport with the claim he now raises. TEX.R.APP. P. 33.1; *Ibarra v. State,* 11 S.W.3d 189, 197 (Tex.Crim.App.1999), *cert. denied,* 531 U.S. 828, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000). Appellant's sixth point of error is overruled.

In his seventh, eleventh, and twelfth points of error, appellant claims he received ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, appellant must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, he must show that counsel's performance was deficient and that he was prejudiced by counsel's deficient performance. In order to demonstrate prejudice, appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

**3.** The defense denied Brantley the opportunity to interview appellant.

proceeding would have been different." *Id.* at 694, 104 S.Ct.2052. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689, 104 S.Ct. 2052.

In his seventh point of error, appellant argues that he received ineffective assistance of counsel because his attorney failed to effectively cross-examine Brantley. Specifically, he asserts that counsel should have questioned Brantley about the reliability of profile evidence.

The suggestion that cross-examination should have been conducted in another manner does not rebut the presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Ex parte Perkins,* 706 S.W.2d 320, 323 (Tex.Crim.App.1986). Further, on cross-examination, counsel elicited testimony from Brantley that there were "disorganized" elements at the crime scenes which indicated that appellant was not consciously eluding detection, suggesting that appellant may have been acting in a psychotic manner. Counsel also questioned Brantley about appellant's travels and Brantley admitted that appellant had been stopped at the United States/Mexico border on at least one occasion during his crime spree but was later released, suggesting that appellant was not as intent on evading capture as a sophisticated criminal would be. The record reflects that counsel effectively cross-examined Brantley. As such, appellant fails to meet the requirements of the first prong of the *Strickland* test.

In his eleventh and twelfth points of error, appellant contends he is entitled to a new punishment hearing because his attorney was ineffective for failing to object to the State's jury argument that the jury could not consider evidence of appellant's troubled background or the actions of law enforcement in securing appellant's arrest as mitigating evidence unless they first found that evidence somehow reduced appellant's moral blameworthiness.

The following is the relevant portion of the State's jury argument:

> Special Issue No. 2 asked you to look at the charge. I'm sorry. Look at all the evidence again. Look at everything you've heard from the beginning. Looking at three things in particular; the circumstances of the offense, the defendant's character, and background, and his personal moral culpability. And it asked you to look at all of that stuff and see if you find anything, mitigating circumstances, and one thing we didn't talk about in voir dire that is in this charge is what a mitigating circumstance could be, which is evidence that one of you may find reducing the defendant's moral blameworthiness. That's, that's what you are supposed to go through and look for. Anything in the record that reduces his moral blameworthiness. And, once again, I want you to base this answer on the evidence, and I challenge you to find anything in the record over the last two weeks that reduces his moral blameworthiness.

The State did not instruct the jury that it could not consider evidence of appellant's background or his dealings with law enforcement as mitigating evidence without first finding that the evidence reduced appellant's moral blameworthiness. Therefore, appellant has not met the requirements of either prong of the *Strickland* test. Appellant's seventh, eleventh, and twelfth points of error are overruled.

In his eighth point of error, appellant argues the 12–10 rule of Article 37.071 which requires ten votes for the jury to return a negative answer to the first or second special issue and at least ten votes

for the jury to return an affirmative answer to the third special issue violates the Eighth Amendment to the United States Constitution. We have repeatedly rejected identical claims. *Johnson v. State,* 68 S.W.3d 644, 656 (Tex.Crim.App.2002); *Wright v. State,* 28 S.W.3d 526, 537 (Tex. Crim.App.2000), *cert. denied,* 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001); *Chamberlain v. State,* 998 S.W.2d 230, 238 (Tex.Crim.App.1999), *cert. denied,* 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000). Appellant's eighth point of error is overruled.

In his ninth point of error, appellant asserts the trial court erred in denying his request to inform the jury that the failure to answer a special issue would result in a life sentence. He claims the trial court's denial violated his rights under the Eighth Amendment to the United States Constitution. We have repeatedly rejected identical claims. *Chamberlain,* 998 S.W.2d at 238; *McFarland v. State,* 928 S.W.2d 482, 519 (Tex.Crim.App.1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). Appellant's ninth point of error is overruled.

In his tenth point of error, appellant claims that "the language in the jury charge informing jurors that in order for the court to assess the 'proper punishment' it was necessary for them to answer the special issues, in conjunction with the absence of an instruction informing them of the consequences of their inability to agree on an answer to a special issue, was so likely to mislead the jury that it would violate the Eighth Amendment." Appellant cites no case law to support his argument. Tex.R.App. P. 38.1(h). Nonetheless, Article 37.071, section 2(a)(1) prohibits the trial court from instructing the jury on the effect of a failure to reach a unanimous decision regarding the special issues. Further, the United States Supreme Court

has held that the Eighth Amendment does not require that juries be informed of the effect of any failure to reach a unanimous agreement regarding punishment. *Jones v. United States,* 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Appellant's tenth point of error is overruled.

In his thirteenth point of error, appellant claims that under *Mosley v. State,* 983 S.W.2d 249 (1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999), and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the mitigation special issue is infirm under the Eighth Amendment to the United States Constitution because it omits a burden of proof. In point of error fourteen, he claims that after *Mosley,* the mitigation special issue is infirm under the Eighth Amendment because it makes impossible any meaningful appellate review of the jury's determination. In point of error fifteen, appellant claims that Article 44.251, requiring appellate review of sufficiency of all capital punishment issues, when interpreted in conjunction with Article 37.071, section 2(e), placing no burden of proof in the mitigation special issue is infirm under the Eighth Amendment. We have addressed and rejected the claim that the mitigation special issue is infirm as a matter of federal constitutional law because it omits a burden of proof. *Jackson v. State,* 33 S.W.3d 828, 840–841 (Tex. Crim.App.2000), *cert. denied,* 532 U.S. 1068, 121 S.Ct. 2221, 150 L.Ed.2d 213 (2001); *McFarland,* 928 S.W.2d at 498–99. We have also addressed and rejected the claim that the mitigation special issue violates the Eighth Amendment on the ground that meaningful appellate review of the jury's determination is impossible. *Prystash v. State,* 3 S.W.3d 522, 535–36 (Tex.Crim.App.1999).

Appellant argues that the absence of a burden of proof is also a problem under

the United States Supreme Court's opinion in *Apprendi.* In *Apprendi,* the Supreme Court held that sentence enhancements based on judicial fact findings violated due process. The Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Appellant contends that *Apprendi* requires the State to bear the burden to prove beyond a reasonable doubt that the mitigation issue should be answered in the negative. Appellant reads *Apprendi* too broadly.

*Apprendi* applies to facts that increase the penalty beyond the "prescribed statutory maximum." Under Article 37.071, the statutory maximum is fixed at death. There are no statutory enhancements. A positive jury finding on the mitigation issue does not have the potential of increasing the penalty; rather, it has the potential to reduce a defendant's sentence. Further, with respect to appellant's claim the State should bear the burden of proof as to mitigation, *Apprendi* does not address this burden.

As to point of error fifteen, we have rejected identical claims and decline to revisit the issue. *Tong v. State,* 25 S.W.3d 707, 715 (Tex.Crim.App.2000), *cert. denied,* 532 U.S. 1053, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001). Appellant's thirteenth, fourteenth, and fifteenth points of error are overruled.

 In his sixteenth point of error, appellant contends that Texas Penal Code section 8.01 is unconstitutional because it does not define the words "know" and "wrong." He claims that the result is the arbitrary and capricious imposition of the death penalty.

 There is no error in omitting the definition of a word used in the statute when the word is used in its ordinary sense and is easily comprehended by everyone. *Russell v. State,* 665 S.W.2d 771, 780 (Tex.Crim.App.1983), *citing Humphreys v. State,* 34 Tex.Crim. 434, 30 S.W. 1066 (1895). If there is no statutory definition of a term, the trial court is not obligated to define the term when it "has such a common and ordinary meaning that jurors can be fairly presumed to know and apply such meaning." *Phillips v. State,* 597 S.W.2d 929, 937 (Tex.Crim.App.1980). Likewise, when the terms used are simple in themselves and are used in their ordinary meaning, such as they are in this case, jurors are supposed to know their meaning, and therefore, a definition in the jury charge is not necessary. *Hogan v. State,* 496 S.W.2d 594, 599 (Tex.Crim. App.), *cert. denied,* 414 U.S. 862, 94 S.Ct. 81, 38 L.Ed.2d 112 (1973), *quoting Joubert v. State,* 136 Tex.Crim. 219, 124 S.W.2d 368, 369 (1938). The terms "know" and "wrong," though not defined in the statute, are common and easily comprehended. Appellant's sixteenth point of error is overruled.

We affirm the judgment of the trial court.

KELLER, P.J., concurred in points of error one and two and otherwise joined the opinion of the Court.

WOMACK, J., filed a dissenting opinion, in which JOHNSON, J., joined.

WOMACK, J., filed a dissenting opinion, in which JOHNSON, J., joined.

This opinion should be substituted for the one that was filed on May 21, 2003.

The appellant raised the defense that he was insane at the time he committed this homicide. As bases for his opinion on the issue of sanity, the appellant's expert wit-

ness used the facts of this homicide and six other homicides that the appellant committed. These facts included photographs of the scenes of the other homicides, which the appellant offered in evidence.

### Were the Photographs Irrelevant?

The State objected to the photographs of the six other scenes as not being relevant, and the trial court sustained the objection. It seems to be beyond serious question that the objection of irrelevance had no merit, since the Court treats the matter as one in which relevant evidence was excluded under Rule of Evidence 403.[1]

### Were the Photographs Inadmissible Evidence Underlying the Opinion of an Expert Witness?

The Court says the trial court also "conducted the balancing test for inadmissible evidence under Rule 705(d) and determined that the photographs could have been used for improper purposes."[2] The Court does not further discuss that rule.

Our Rule of Evidence 703 states that an expert witness's opinion may be based on facts or data that are not admissible in evidence if they are of a type reasonably relied on by experts in the field in forming opinions or inferences on the subject. Further, "[t]he expert may in any event disclose on direct examination ... the underlying facts or data."[3]

These rules are a departure from the view of the majority of common law courts that forbade an expert witness's opinion to be based on hearsay or reports that were not in evidence.[4] Although there was "a strong case law trend toward a contrary view,"[5] it did not include the cases of the Texas courts. "Prior to the adoption of Rule 703, Texas courts refused to permit experts to state opinions based solely on hearsay outside the record, regardless of its admissibility or inadmissibility. As late as 1980, this rule was reaffirmed by the Texas Supreme Court ... [and a] year later, the Court of Criminal Appeals."[6]

Perhaps this is why Texas' Rule 705(d), unlike the federal rules, mandates a balancing test if the underlying facts or data are inadmissible in evidence. "When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than an explanation or support for the

---

1. "The trial court's alternative theory for the exclusion of the photographs under Rule 403 was correct." *Ante,* at 546.

2. *Ante,* at 545.

3. Tex.R. Evid. 705(a).

4. "A question calling for a direct opinion based upon firsthand knowledge of an expert is so direct, simple, and thus effective that a party may for similar reasons desire to obtain an opinion based upon reports of others. There formerly was a majority view, however, that a question is improper if it calls for the witness' opinion on the basis of reports that are not in evidence or are inadmissible in evidence under the hearsay rule (without reciting their contents as hypotheses, to be supported by other evidence as to their truth.)

The essential reason in support of this view is that seemed to be that the jury was asked to accept as evidence the witness' inference, based upon someone's hearsay or upon other inadmissible facts which were presumably not supported by any evidence at the trial and which therefore the jury had no basis for finding to be true ....

[A] broader view [was taken] in Federal Rule of Evidence 703, which has been adopted in various state jurisdictions." EDWARD W. CLEARY, MCCORMICK ON EVIDENCE 38–39 (3d ed.1984).

5. *Id.,* at 39.

6. STEVEN GOODE, OLIN GUY WELLBORN, III, AND M. MICHAEL SHARLOT, 2 TEXAS PRACTICE—GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 703.3 (2d ed.1993) (footnotes omitted).

expert's opinion outweighs their value as explanation or support, or are unfairly beneficial." [7] Exclusion is not always required. "Usually . . . a limiting instruction will suffice to negate the danger that the jury will improperly consider the inadmissible hearsay for its substantive purpose and . . . Rule 705(d) requires that one be given upon timely request." [8]

These photographs were not hearsay or extra-record evidence on which the expert relied. Rule 705(d) plays no part, in my view.

### Was the Evidence Confusing or Misleading?

The trial court also ruled "under Rule 403" that the evidence was "cumulative," would cause "needless delay," and "confusion of the issues." [9]

The Court says, "The photographs in question were likely to distract the jury from the facts of the crime charged and focus their attention on other crime scenes." [10] There was no dispute about the conduct and the result of the offense that was charged, and hence no danger of distraction from those facts.

The disputed fact of this homicide was the appellant's sanity at the time he committed it. The parties agreed that this homicide was one of a series of homicides that the appellant committed. The opinion of the appellant's expert witness was that the facts of all the homicides were relevant to the appellant's sanity in this homicide. Surely they were relevant. The trial court received in evidence the facts of the other offenses, and there seems to be no disagreement about their relevance. I believe the correct question is whether photographs of the scenes of those admittedly relevant homicides would be a distraction from the only contested issue, which was the appellant's sanity. If the Court would consider that question, perhaps it would hold, as I do, that the photographs would not have been a distraction from the contested issue.

### Did the Evidence Lack Probative Value?

Although admitting that the photographs "were relevant to the issue of appellant's sanity," the Court says that "merely viewing the photographs would not necessarily prove that appellant was *legally* insane, therefore their probative value was limited." [11] What does this mean? "Necessarily" means "inevitably" or "as a necessary result," and "necessary," in this usage, means "unavoidable." [12]

If this, or any, evidence necessarily proved an excuse like insanity, I suppose that a court would direct an acquittal. "Necessarily proving" a fact is not a requisite for evidence to admissibility. All that is required is that evidence be relevant. [13] Relevant evidence is "evidence having *any* tendency to make the existence of any fact

---

7. TEX.R. EVID. 705(d).

8. GOODE ET AL., *supra* note 6, § 705.3.

9. *Ante,* at 545. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403.

10. *Ante,* at 545.

11. *Ante,* at 545 (punctuation *sic* ).

12. *See* OXFORD AMERICAN DICTIONARY 444 (1980).

13. "All relevant evidence is admissible, except as otherwise provided by the Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible." TEX.R. EVID. 401.

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [14]

The Court says that because these photographs would not necessarily prove that appellant was insane, "therefore their probative value was limited." [15] Now, all evidence has limited probative value; I have not heard of any evidence that had unlimited probative value. Is the limited value of this evidence different from the limited value of other evidence? Or is all evidence that has limited value also evidence does that does not necessarily prove a fact? Is there any meaningful way to distinguish the limited probative value of these photographs from the probative value of any other item of evidence? Or does a trial court have discretion to exclude every item of evidence because every item has limited probative value?

### Would the Evidence Confuse Abnormal with Insane?

The Court says, "While gruesome and shocking photographs depicting other crime scenes may convince the jury that appellant has committed acts unthinkable to most 'normal' people, this does not mean that, at the time of the Benton offense, appellant did not know that his conduct was wrong as required under Section 8.01(a). Additionally, Section 8.01(b) specifically states that abnormality manifested by repeated criminal conduct, such as the multiple murders depicted in the photographs, is not to be considered a mental disease or defect." [16]

The Court misstates the statute, which says that " 'mental disease or defect' does not include an abnormality manifested

*only* by repeated criminal … conduct." [17] Surely the Court cannot mean that a person who repeatedly commits crimes cannot be found to have a mental disease or defect that is also manifested in other ways.

The more important aspect of the Court's statement is the previous sentence, in which it says that evidence of the appellant's conduct does not "mean" that he was insane—once again devaluing this evidence because it did not conclusively prove the issue of insanity, which no evidence has ever done or can ever do. The sentence also says that photographs of the scenes of a person's six homicides might show that the person was unthinkably abnormal, but might confuse the issue of whether he was insane. How? Why?

Now, the trial court received oral evidence about the other homicides as relevant to the issue of insanity. Is the Court saying that that evidence also was relevant to abnormality, but not insanity? Can there be evidence of insanity that is not also evidence of abnormality? If there can be, how does the Court know that these photographs are evidence of the latter and not the former?

Or is it the photographic nature of the excluded evidence that makes it more relevant to abnormality than to insanity? Is that true of all photographs, or only of homicide-scene photographs? Or is there something about these particular photographs that would turn a juror's mind away from the issue of insanity, and into the irrelevant area of abnormality?

### They Should Have Been Admitted.

No one suggests that the photographs of the six other homicides that the appellant

---

**14.** Tex.R. Evid. 403 (emphasis added).

**15.** *Ante,* at 545.

**16.** *Ante,* at 545–46.

**17.** Tex. Penal Code § 8.01(b).

committed were misleading or unreliable in any way. There is no serious question of their relevance to the issue of insanity; the Court and I do not disagree on that point. Why would the State not want the jury to have this reliable, relevant evidence to decide the issue of the appellant's insanity? I fear that the Court's opinion hints at the answer: The State did not want the jury to see these photographs because they would have been powerful evidence that the appellant was abnormal. Proof of abnormality was a necessary step in his effort to prove that he was insane and should be confined in a mental hospital rather than given the lethal injection that the State desired. I do not intimate any view as to his sanity, or suggest that the facts would require or even justify a finding of insanity. I do think that his evidence was admissible, that he should have a trial in which the jury sees it, and that the law requires that he does.

I would sustain the appellant's first and second points and remand this case for a new trial.