Affirmed and Memorandum Opinion filed June 9, 2009








Affirmed and
Memorandum Opinion filed June
9, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00176-CR

____________

 

MICHAEL SEGOVIA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 182nd
District Court

Harris County, Texas

Trial Court Cause No. 1116717

 



 

M E M O R A N D U M   O P I N I O N

Appellant
Michael Segovia challenges his conviction for criminally negligent homicide. 
The jury assessed punishment as confinement for three years and a fine of
$7,500.  Appellant contends the trial court erred by (1) overruling his
objections to testimony that he did not speak to the police prior to trial; (2)
overruling his objections to testimony that he contacted and retained counsel
before contacting the police; and (3) excluding testimony that appellant had
been told of threats the complainant made against him, and that the complainant
had killed a police officer in Mexico.  We affirm.








Background

Appellant
went to a nightclub during the evening of May 12, 2007 with his wife, Mila
Segovia, and Mila=s friend, Diana Altamirano, to celebrate Mila=s birthday.  Following the celebration,
appellant and Mila drove Diana to the apartment of Diana=s mother during the early morning
hours of May 13, 2007.  The group stopped by the house of appellant=s parents to pick up the Segovias= one-year-old daughter, Ariel.

Upon
arriving at the apartment complex, appellant waited in the driver=s seat with Ariel in the back seat
while Mila escorted Diana upstairs to her mother=s apartment.  The complainant, who
was the boyfriend of Diana=s mother, answered the door when the two women approached the
apartment.

Mila and
Diana turned to leave and hurried downstairs to the car.  The complainant
followed them to the landing at the bottom of the first set of stairs and then
stopped.  Appellant and the complainant engaged in a verbal confrontation as
Mila and Diana continued making their way to the car.  Appellant remained in
the driver=s seat of the car with the engine running, but leaned out of the window
as he argued with the complainant.

After
Mila and Diana reached the car, appellant fired one shot from his revolver
toward the complainant before driving away.  The bullet struck the complainant
in the jaw and killed him.  The landing on which the complainant was standing
when he was shot was approximately 34 feet from where appellant was parked.  No
weapon was found on or near the complainant=s body.

A formal
complaint charging appellant with murder was filed on May 14, 2007.  Appellant
turned himself in upon the advice of counsel and appeared before the court on
May 16, 2007.  Appellant waived his statutory warnings at that appearance.  He
subsequently was indicted for murder.








Trial
began on February 26, 2008.  Appellant asserted self-defense and defense of
third persons at trial.  The jury found appellant guilty of the lesser-included
offense of criminally negligent homicide, sentenced him to confinement for
three years, and imposed a $7,500 fine.  The trial court signed its judgment
imposing the jury=s sentence on March 4, 2008.  Appellant appeals from this
judgment.

Standard of Review

We review a trial court=s decision to
admit or exclude evidence for abuse of discretion.  Martin v. State, 246 S.W.3d 246, 258 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 
We will not reverse a trial court=s ruling unless that ruling falls
outside the zone of reasonable disagreement.  Id.  We cannot reverse a trial
court=s admissibility
decision solely because we disagree with it.  Powell v. State, 63 S.W.3d
435, 438 (Tex. Crim. App. 2001).  We must affirm a trial court=s ruling if it is
correct on any theory of law applicable to the case.  Dickson v. State,
246 S.W.3d 733, 738 (Tex. App.CHouston [14th Dist.] 2007, pet. ref=d).

Analysis

I.        Admission of Testimony
That Appellant Did Not Speak to Police and Retained Counsel Before Contacting
Police

Appellant
contends on appeal that the trial court=s evidentiary rulings violated (1)
his right not to speak to the police under Article I, Section 10 of the Texas
Constitution and Amendment V of the United States Constitution as applied to
the states by Amendment XIV; and (2) his right under article 38.38 of the Texas
Code of Criminal Procedure to exclude evidence that he retained an attorney. 
The State contends that appellant waived these complaints.  We begin by
analyzing each exchange about which appellant complains.

A.        Preservation of Error
Standards








Constitutional
claims may be waived by the failure to raise a timely objection in the trial
court.  Arana v. State, 1 S.W.3d 824, 827 n.3 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).  To preserve error for appellate
review, an appellant must make a timely, specific objection and obtain an
adverse ruling.  See Tex. R. App. P. 33.1(a); Erazo v. State, 260
S.W.3d 510, 514 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).  An appellant=s complaint on appeal must comport
with the objection made at trial; otherwise, the appellant has preserved nothing
for review.  See Tex. R. App. P. 33.1(a); Resendiz v. State, 112
S.W.3d 541, 547 (Tex. Crim. App. 2003).

To avoid
forfeiture of a complaint on appeal, the complaining party must let the trial
judge know what relief he wants, why he believes he is entitled to it, and make
his point clearly enough that the trial judge can understand him when the trial
court is in the proper position to address the complaint.  See Clarke v.
State, 270 S.W.3d 573, 580 (Tex. Crim. App. 2008).  An appellant fails to
preserve a state constitutional complaint for our review when his objection to
questions about his right to silence invokes only Amendment V of the United
States Constitution.  See Heidelberg v. State, 144 S.W.3d 535, 542-43
(Tex. Crim. App. 2004) (en banc). 

A complaining
party must object each time allegedly inadmissible evidence is offered.  See
Reynolds v. State, 848 S.W.2d 785, 792 (Tex. App.CHouston [14th Dist.] 1993, pet. ref=d).  As a general rule, a complaint
regarding improperly admitted evidence is waived if the same evidence is
introduced elsewhere during trial without objection.  See Mitchell v. State,
68 S.W.3d 640, 643 (Tex. Crim. App. 2002) (en banc); Wootton v. State,
132 S.W.3d 80, 84 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d).

Pre-arrest
silence is a constitutionally permissible area of inquiry for impeachment
purposes during cross-examination of a defendant.  Jenkins v. Anderson,
447 U.S. 231, 238-40 (1980); Waldo v. State, 746 S.W.2d 750, 755 (Tex.
Crim. App. 1988) (en banc).  The Fifth Amendment to the United States
Constitution protects post-arrest silence arising after Miranda warnings
have been given.  Heidelberg, 144 S.W.3d at 537.








When (1)
the State asks questions about a defendant=s silence that are not time-specific;
(2) defense counsel fails to cite the Texas Constitution or specify that his
objection relates to post-arrest silence; and (3) the trial judge=s commentary and rulings indicate no
reliance on the Texas Constitution or awareness that defense counsel=s objection was intended to relate to
post-arrest silence, an objection on Fifth Amendment grounds preserves no state
constitutional claims for review.  See id. at 536-43.

B.        Application of Preservation
Standards

The
first exchange about which appellant complains occurred during direct
examination of Houston Police Officer Dan Arnold by the State:

STATE:           Now, Officer, did [appellant] ever
turn himself in to you on May 13th?

ARNOLD:      No, ma=am.

STATE:           Did he ever voluntarily come and talk
to you about the case?

ARNOLD:      No.

STATE:           Did he ever come and hand you the gun
that he used?

DEFENSE:     Excuse me, your Honor _

ARNOLD:      No.

DEFENSE:     _ this is not
in good faith.  Did he ever _ he did go to the police
station _

COURT:         Well, let=s _

DEFENSE:     _ but not
through this person.

STATE:           Objection to defense testifying, your
Honor.

COURT:         Yeah.  The objection is sustained. 
Please, no.

DEFENSE:     The question was: did he _

COURT:         You=ll
have a full opportunity, sir.

STATE:           Did you, at some point, receive a
phone call?

ARNOLD:      I did.

STATE:           And who was that from?

ARNOLD:      [Defense counsel].

STATE:           And after speaking with [defense
counsel], did [defense counsel] and/or [appellant] ever come see you?

ARNOLD:      They did not.

STATE:           Did [defense counsel] and/or
[appellant] come and explain to you _

DEFENSE:     Okay.  Then I=m going to object as well _








COURT:         Sustain the objection.

DEFENSE:     Thank you.

STATE:           After speaking with [defense
counsel], did you ever have an opportunity to speak to [appellant]?

ARNOLD:      I did not.

STATE:           Now, what did you do after you had
spoken to [defense counsel]?

DEFENSE:     Your Honor, I=m going to have to approach.  This is going to be a
Motion for a Mistrial, and I=m going to have
to make my argument not in front of the jury.

COURT:         Motion for mistrial is denied.

DEFENSE:     You asked me yesterday _

COURT:         Make your Bill, sir.

DEFENSE:     _ not to argue
in front of the jury, and I ask to approach the Bench.

COURT:         Make your Bill at lunchtime, please.

STATE:           What did you do next in regards to
your investigation?

DEFENSE:     Excuse me.  I=m sorry.  I know I may _ I
want it to be timely.  I=m required to make a timely objection.

COURT:         You have, sir.

DEFENSE:     Will you deem it timely at noon?

COURT:         Yes.

As
directed by the trial court, appellant explained his objections later during
the noon recess.[1]

COURT:         We can make your Bill now.  Have you
focused on what it is, and do you need the witness?

DEFENSE:     No.  No.  I can _ I=m going to
proffer the Bill.








COURT:         Okay.

DEFENSE:     And it=s
on three different points that happened.  The first one is the comment on the
defendant=s refusal to come in and talk to the police officer. 
And I objected to that and couldn=t
ever get the full objection out until you said I could make it at noon, but I=m making it now.  That is _

COURT:         Are you listening?

STATE:           Yes, your Honor.  I am listening.

COURT:         Okay.

DEFENSE:     That is a comment on [appellant=s] right not to talk to police officers if they don=t want to.  It=s
the Fifth Amendment Right.  And it=s
prejudicial.  And the jury ought to _ should not
have heard whether or not he refused to come in and talk to him.  And that was
a pure implication.

ADid you want to talk to him?@

AYes.@

AWere you ever allowed to talk to him?@

ANo.@

That=s not relevant to this case, and it should have been _ my objection, in my humble opinion, should have been
stopped.  The prosecutor should have not done that.  If the jury thinks that
there=s maybe some reason that he didn=t talk to the _ and that=s the whole purpose behind the Fifth Amendment and
ourrule not to let a jury even consider or hear those things.  That=s my first point, my first objection.

Appellant
concluded his explanation by attempting to clarify the record regarding his
Fifth Amendment objections:

DEFENSE:     I=m
not sure if we ever got a ruling on the _ after you
allowed me to express my objection on the Bill _ about
the asking if he ever got to interrogate [appellant].  I don=t know if we ever got a ruling on it once you
understood what my objection was.

COURT:         On the Bill, where you were revisiting
what went on this morning, all my rulings are still in place, the same ones.








During
this first exchange, appellant objected to two questions.  Appellant=s objection to the question, ADid [defense counsel] and/or
[appellant] come and explain to you _@ was sustained and need not be discussed
further.  See Tex. R. App. P. 33.1(a); Erazo, 260 S.W.3d at 514. 


The
other question to which appellant objected was, ADid he ever come and hand you the gun
that he used?@  Appellant objected to this question on Fifth Amendment grounds, and
asserted that it was Anot in good faith.@  Appellant did not invoke the Texas
Constitution or article 38.38 as grounds for this objection during trial;
therefore, no complaint based on the Texas Constitution or article 38.38 was
preserved for our review.  See Heidelberg, 144 S.W.3d at 542-43; Resendiz,
112 S.W.3d at 547.  Appellant=s Fifth Amendment objection to this specific question was
waived when appellant later testified without objection that he threw the gun
used in the shooting into a bayou off Mason Road.  See Wootton, 132
S.W.3d at 84.

The next
two exchanges about which appellant complains occurred during the State=s cross-examination of appellant:

STATE:                       Now, also according to
Diane, [the complainant] just had his hand on his thigh.  She never saw him
reach for anything.  But now you=re
saying he did?

APPELLANT:            I did, ma=am.

STATE:                       And today is the first
day you ever said that, right?  To anyone, correct?

DEFENSE:                 Excuse me.

APPELLANT:            No, ma=am.

DEFENSE:                 Objection, your Honor.  May
we approach the Bench?

COURT:                     Yes.

(At Bench)

DEFENSE:                 That is a direct comment on a
person=s right, Fifth Amendment Right, not to talk to a
police officer.

STATE:                       It=s not a Fifth Amendment Right [not] to talk to a
police officer.  It=s a Fifth Amendment Right not to testify in court.








DEFENSE:                 No.  No.  The Fifth Amendment
says you have a right to silence. And what happened was she=s proved up that [appellant] _

STATE:                       That=s in court.

COURT:                     Don=t talk at the same time, please.

DEFENSE:                 And she has now said _ maybe you didn=t
see the transaction happen _ but she has now said, AThis is the first time you=ve said that; isn=t
that right?@  Meaning didn=t
tell any police officer.

COURT:                     Objection is overruled.

*                    *                    *

STATE:                       Well, were you aware that
your wife was at the police station at some point?

APPELLANT:            As soon as I was aware, I turned
myself in, ma=am.

STATE:                       No.  You went and called
a lawyer; isn=t that true?

APPELLANT:            Yes, ma=am, so my words wouldn=t be twisted up.

STATE:                       Okay.  Well, do you think
the police framed you, Mr. Segovia?

APPELLANT:            No, ma=am.  No, ma=am.

STATE:                       Okay.  There=s nothing wrong with making a statement, is there?

APPELLANT:            No, ma=am, there=s
not.

STATE:                       But you never gave one,
did you?  You never gave a statement _

DEFENSE:                 Your Honor _

APPELLANT:            I wanted to.

DEFENSE:                 Excuse me.  I=m not fearful of the answer.  But this is the same
thing I=ve been objecting to, about a person=s right to have counsel and assistance of counsel.

COURT:                     Certainly.  And the
objection=s overruled.

DEFENSE:                 Note my exception, your
Honor.

STATE:                       You could have told your
lawyer, couldn=t you have?

DEFENSE:                 Excuse me.  A person should
not be penalized for exercising a right to counsel, and that=s what she=s
trying to do.








COURT:                     Certainly.

DEFENSE:                 Re-urge my motion.

COURT:                     The motion is overruled.

STATE:                       You chose not to make any
statements before you reached a lawyer, correct?

DEFENSE:                 That=s not even correct.  So, I have to object.  And it=s _

COURT:                     The objection=s overruled.

STATE:                       Isn=t that correct?

APPELLANT:            Can you repeat the question?

STATE:                       Mr. Segovia, today is the
first time _ what is it?  May.  We=re in February.  Almost ten months to a year later.  For the first time
today _

DEFENSE:                 Your Honor, I=m going to re-urge it.  No one even asked him for a
statement.

STATE:                       Your Honor _

DEFENSE:                 You know, it=s like this is a misleading _

STATE:                       I=m going to object to speaking objections.

DEFENSE:                 _ prejudicial _

COURT:                     When you both talk at the
same time, it=s impossible for the court reporter to do justice to
either one of you.  The objection is overruled.

During
the first of these exchanges, appellant objected to the question, AAnd today is the first day you ever
said that, right?  To anyone, correct?@  Appellant objected to this question
only on Fifth Amendment grounds, and did not preserve any complaint under the
Texas Constitution or article 38.38 of the Texas Code of Criminal Procedure.  See
Heidelberg, 144 S.W.3d at 542-43; Resendiz, 112 S.W.3d at 547.








Our
conclusion that appellant failed to preserve any complaint under the Texas
Constitution rests on Heidelberg.  In that case, the defendant was
convicted of sexually assaulting his wife=s eight-year-old granddaughter.  Heidelberg,
144 S.W.3d at 535.  The defendant complained that the trial court erred by (1)
allowing him to be cross-examined about his post-arrest silence; (2) allowing
the State to elicit rebuttal testimony about his post-arrest silence; and (3)
overruling his objections to the State=s comments on his post-arrest silence
during closing argument.  Id. at 535-36.  The First Court of Appeals
held that the defendant failed to preserve his objections under the Texas
Constitution and affirmed the conviction.  Id.

On
appeal, the defendant contended that the trial court violated the Texas
Constitution by allowing the State to refer to his post-arrest silence.  Id.
at 537 (citing Tex. Const. art. I, _ 10).  The State contended that the defendant waived
any complaints based upon the state constitution because his objections at
trial were based solely on the Fifth Amendment to the United States Constitution. 
Id.  The Court of Criminal Appeals stressed that the Texas Constitution
protects a defendant=s post-arrest silence prior to receipt of Miranda
warnings, while the Fifth Amendment protects post-arrest silence arising only
after Miranda warnings have been administered.  Id. (citing Fletcher
v. Weir, 455 U.S. 603 (1982), and Doyle v. Ohio, 426 U.S. 610, 618
(1976)).

The
State=s questions about which the defendant
complained in Heidelberg did not specify whether they referred to his
silence before or after Miranda warnings were given.  Id. at
536-37, 542-43.  The defendant did not invoke the Texas Constitution when he
objected at trial, nor did he indicate to the trial court that he was
contesting comments on his post-arrest silence.  Id.  The record in the
case did not indicate any reliance by the trial judge on the Texas Constitution
in ruling on the objections, or any awareness on the trial court=s part that the defendant intended to
invoke the state constitution.  Id.  The Court of Criminal Appeals held
that a Fifth Amendment objection under such circumstances does not preserve for
review a complaint invoking the Texas Constitution.  Id. at 542-43.  








Here, as
in Heidelberg, (1) appellant objected only on Fifth Amendment
constitutional grounds; and (2) the trial court gave no indication that it
relied on the Texas Constitution in overruling appellant=s objections or was aware that
appellant intended to invoke the state constitution.  See id.  Because
we conclude that Heidelberg controls, we hold that appellant waived his
state constitutional complaint.  See id.  However, appellant=s objection did preserve his Fifth
Amendment complaint for review on the merits.  See Tex. R. App. P.
33.1(a); Clarke, 270 S.W.3d 573, 580.

During
the second exchange above, appellant objected to the question, ABut you never gave one, did you?  You
never gave a statement _@ on grounds that it constituted an impermissible comment on
appellant=s right to retain counsel.  While appellant did not specifically mention
article 38.38 at trial, it is apparent from the record that his objection was
based on that statute.  See Tex. Code Crim. Proc. Ann. art. 38.38
(Vernon 2005) (AIn a criminal case, neither the judge nor the attorney
representing the state may comment on the fact that the defendant has contacted
or retained an attorney in the case.@).  Appellant=s objection preserved his article
38.38 complaint for review.  See Clarke, 270 S.W.3d 573, 580; Smith
v. State, ___ S.W.3d ___, No. 14-07-00966-CR, 2009 WL 1312953, at *2 n.2
(Tex. App.CHouston [14th Dist.] May 12, 2009, no pet. h.).  Appellant did not
preserve any constitutional complaints for review based on this objection.  See
Resendiz, 112 S.W.3d at 547.

Appellant
then spoke up following the State=s next question: AYou could have told your lawyer,
couldn=t you have?@  Rather than objecting, appellant
mentioned the exercise of the right to counsel and re-urged his motion for
mistrial.  The trial court replied: AThe motion is overruled.@  Because appellant challenges only
the overruling of his objections on appeal, this ruling on a re-urged motion
for mistrial preserves nothing for review.  See id.  Furthermore, even
if we were to treat appellant=s re-urging of his motion for mistrial as an objection, this
complaint was not preserved for our review because the same information sought
by the question asked was introduced by the State=s next few questions discussed
below.  See Wootton, 132 S.W.3d at 84.  








Appellant
then objected to the question, AYou chose not to make any statements before you reached a
lawyer, correct?@ on grounds that AThat=s not even correct.@  Appellant=s final objection in this exchange
was to the question, AMr. Segovia, today is the first time _ what is it?  May.  We=re in February.  Almost ten months to
a year later.  For the first time today _@ and asserted that the question was
misleading and prejudicial.[2]  These
objections were not based on the Fifth Amendment, the Texas Constitution, or
article 38.38, and they preserve nothing for review.  See Resendiz, 112
S.W.3d at 547.

Finally,
appellant complains on appeal about two paragraphs from the State=s closing argument in which the State
referenced appellant=s failure to contact the police following the shooting. 
Appellant failed to object at trial to these two paragraphs.  Because appellant
failed to timely object, he preserved nothing from the State=s closing argument for review.  See
Tex. R. App. P. 33.1(a); Erazo, 260 S.W.3d at 514.

With
regard to appellant=s first two issues, we are left with two preserved
complaints: one on Fifth Amendment grounds, and another on article 38.38
grounds.  We now analyze these issues on the merits.

C.      Analysis
of Appellant=s Fifth Amendment Complaint on the
Merits

Appellant
contends that the trial court erred by overruling his Fifth Amendment objection
to the State=s question, AAnd today is the first day you ever said that, right?  To
anyone, correct?@ during cross-examination of appellant.  Appellant contends
that this question violated his rights under the Fifth Amendment because it
constituted an improper comment on his decision to remain silent and to not
make potentially inculpatory statements to police.  The State contends that
appellant had no Fifth Amendment right to silence in this context because (1)
appellant was not arrested, but instead turned himself in after the complaint
was filed; and (2) Fifth Amendment protection applies to only post-arrest
silence following the reading of an individual=s Miranda rights.

It is
undisputed that appellant was not arrested; instead, he turned himself in after
charges had been filed on May 14, 2007.  It also is undisputed that appellant
waived his statutory warnings at a court appearance on May 16, 2007.  








As noted
earlier, the Fifth Amendment protects post-arrest silence arising after Miranda
warnings have been administered.  Heidelberg, 144 S.W.3d at 537. 
Appellant invites us to take the Fifth Amendment protections governing
post-arrest silence and apply them to what he calls Apost-complaint@ silence.  Appellant concedes that he
can identify no authority analogizing Apost-complaint@ silence _ in this case, appellant=s silence after May 14, 2007 _ to post-arrest silence.  We have
found no such authority.  Under these circumstances, the Fifth Amendment
protections invoked by appellant do not apply.  See id. at 542-43. 
Therefore, the trial court acted within its discretion when it overruled
appellant=s Fifth Amendment objection.  See Martin, 246 S.W.3d at 258.

We
overrule appellant=s issue regarding the overruling of his Fifth Amendment
objections to testimony about his failure to speak to the police prior to
trial.        

D.      Analysis
of Appellant=s Article 38.38 Complaint on the
Merits

Appellant
contends that the trial court erred by overruling his article 38.38 objection
to the State=s question, ABut you never gave one, did you?  You never gave a statement _@ during cross-examination of
appellant.  The State contends that this question related to appellant=s desire to remain silent rather than
to his right to counsel, and appellant=s objection on article 38.38 grounds
properly was overruled.

In a
criminal case, neither the trial court nor the attorney representing the state
may comment on the fact that the defendant has contacted or retained an
attorney in the case.  Tex. Code Crim. Proc. Ann. art. 38.38.  Statements that
an accused does not wish to speak to the police before consulting an attorney
are more properly characterized as referencing the accused=s desire to remain silent rather than
his right to counsel.  See State v. Lee, 15 S.W.3d 921, 923-24 (Tex.
Crim. App. 2000), overruled on other grounds by Ex parte Lewis, 219
S.W.3d 335 (Tex. Crim. App. 2007); Dinsmore v. State, No.
14-06-01089-CR, 2008 WL 2133198, at *3 (Tex. App.BHouston [14th Dist.] May 20, 2008, no
pet.) (mem. op., not designated for publication).








A close
examination of the State=s question about the absence of a statement by appellant to
the police demonstrates that it addressed appellant=s desire not to speak with police
rather than appellant=s retention of counsel.  See Lee, 15 S.W.3d at 923-24;
Dinsmore, 2008 WL 2133198, at *3.  Therefore, the trial court acted
within its discretion in overruling appellant=s objection on article 38.38
grounds.  See Martin, 246 S.W.3d at 258.

We
overrule appellant=s issue regarding the overruling of his objections to
testimony that he contacted and retained counsel before contacting the police.

II.       Exclusion
of Testimony Regarding the Complainant=s Violent
Character

Appellant
next contends on appeal that the trial court erred by excluding testimony from
third parties establishing appellant=s knowledge of the complainant=s propensity for violence.  Appellant
proffered this evidence to support his theories of self-defense and defense of
third persons.  The State contends that this evidence was in fact admitted
before the jury and, in the alternative, that any error by the trial court in
excluding such testimony was harmless.

Generally,
a defendant in a murder case who raises the issue of self-defense may introduce
evidence of the complainant=s violent character.  Tex. R. Evid. 404(a)(2); Torres,
71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  The defendant may offer opinion or
reputation testimony to prove the complainant acted in conformity with his
violent nature.  Tex. R. Evid. 404(a)(2); Torres, 71 S.W.3d at 760. 
Specific, violent acts of misconduct may be admitted to show (1) the
reasonableness of the defendant=s fear of danger; or (2) that the complainant was the first
aggressor.  Torres, 71 S.W.3d at 760.[3]








A.        Admitted Third-Party
Evidence

The
record contains substantial testimony from third parties about the complainant=s propensity for violence C including testimony about specific
instances of violence C upon which the jury reasonably could have relied to draw
conclusions regarding appellant=s state of mind at the time of the shooting.  Diana
Altamirano testified that (1) she saw the complainant hit her mother multiple
times; (2) Diana and other family members had called the police multiple times
regarding the complainant=s domestic violence; (3) she moved out of her mother=s residence in part because of an
incident in which the complainant hit her, her mother, and one of her sisters;
(4) police removed the complainant from Diana=s mother=s residence twice for assaulting
Diana=s mother; (5) the complainant
sexually assaulted Diana; and (6) the complainant had been arrested and removed
from Diana=s mother=s residence Ashortly before@ the shooting.

Karen
Altamirano, Diana=s teenage sister who still lived with Diana=s mother at the time of the shooting,
testified that (1) she saw the complainant slap and push her mother; (2) Karen
and her younger sister called the police to their residence several times to
protect their Afamily from what [the complainant] might do@; (3) Karen had been home when police
had come to the residence and arrested the complainant; (4) she was present in
September 2006 when the complainant held a knife to her mother=s neck and her younger sister called
the police; (5) Karen was present on May 3, 2007 C 10 days before the shooting C when the complainant used a tire
tool to pound on the door to the residence and was then taken away by police;
and (6) the complainant once hit her mother in the chest with a tequila bottle
and then poured the tequila onto Karen and her mother when Karen intervened. 
Officer Arnold testified that the complainant Ahad been arrested recently@ before the May 13, 2007 shooting. 
Houston Police Officer Darren Chippi testified that he searched a purse inside
the residence of Diana=s mother for weapons based upon Asomething else that I had learned@ but to which he could not testify
specifically Awithout saying what somebody else told me.@








In
addition to the testimony from third parties regarding the complainant=s propensity for violence, there also
was testimony from third parties from which the jury reasonably could have
inferred that appellant was aware of the complainant=s violent tendencies.  Diana Altamirano
testified that (1) appellant told her after the shooting that Ahe was just trying to protect his C it was fast and he didn=t know it was going to happen@; (2) she told officers that
appellant thought the complainant was trying to hurt him, Mila Segovia, and
Ariel Segovia; (3) she told appellant=s wife and co-worker about the
complainant sexually assaulting her; and (4) Diana told appellant and his wife
about the complainant=s Aassaultive character.@

A trial
court may exclude relevant evidence if its probative value is substantially
outweighed by considerations of undue delay or needless presentation of
cumulative evidence.  Tex. R. Evid. 403; Long v. State, 823 S.W.2d 259,
275 (Tex. Crim. App. 1991) (en banc).  In light of the substantial third-party
testimony regarding the complainant=s general propensity for violence and
specific acts of violence against Diana Altamirano and her mother described
above, the trial court acted within its discretion in excluding additional
third-party testimony relevant to the complainant=s propensity for violence.  See
Dickson, 246 S.W.3d at 738; Martin, 246 S.W.3d at 258.

B.        Evidence Not Established by
Third Parties   

Appellant
complains that the trial court thwarted his attempts to introduce through a
third party that the complainant had killed people in Mexico C including a police officer C and had threatened appellant. 
Appellant contends he was forced to testify to place that specific evidence
before the jury.  We need not decide whether the trial court erred by excluding
third-party testimony of these specific acts because, assuming for argument=s sake that this evidence was
admissible, appellant cannot demonstrate harm on this record.








We
disregard non-constitutional errors that do not affect substantial rights.  See
Tex. R. App. P. 44.2(b); Ray v. State, 178 S.W.3d 833, 836 (Tex.
Crim. App. 2005).  We examine the record as a whole and if we are fairly
assured that the error did not influence the jury or had but a slight effect,
we conclude that the error is harmless.  See Ray, 178 S.W.3d at 836; Cruz
v. State, 122 S.W.3d 309, 315 (Tex. App.CHouston [1st Dist.] 2003, no pet.).

The
weight of the evidence of a defendant=s guilt is a relevant factor in
conducting  a Rule 44.2(b) harm analysis.  Motilla v. State, 78 S.W.3d
352, 360 (Tex. Crim. App. 2002).  The character of the alleged error and how it
may be considered in connection with other evidence in the case also are
relevant.  Id. at 359.  We may also consider the jury instructions, the
State=s theory of the case, and any
defensive theories.  Id. at 355.

Appellant
testified that he had heard that the complainant was Aon the run from Mexico@ and was wanted there for multiple
killings, although appellant never specifically testified to hearing that the
complainant had killed a police officer.  Appellant also testified that he had
been told of threats by the complainant to kill him, Diana, Diana=s boyfriend, and Diana=s mother.  Appellant relies on Ray
for the proposition that he was harmed by being forced to testify in order to
bring this evidence before the jury.  See Ray, 178 S.W.3d at 836.

Appellant=s reliance on Ray is
misplaced.  In Ray, the defendant was the front-seat passenger of a car
in which police found a bottle containing eight rocks of crack cocaine hidden
between the passenger seat and the center console.  Id. at 835.  The
defendant admitted to possessing the drug paraphernalia police found in her
purse, but denied possessing the bottle of crack cocaine.  Id.  The
trial court excluded the testimony of an acquaintance of appellant that the
driver of the car took one rock of crack from a container similar to the one
found by police and gave it to him shortly before the car was stopped.  Id. 
The defendant then was left with only her own self-serving
testimony regarding who possessed the drugs.  See id.








This
case is distinguishable from Ray because, as described above, the jury
had before it substantial evidence regarding the complainant=s propensity for violence and
appellant=s awareness of that propensity, including third-party testimony that the
complainant had committed sexual assault and acts of domestic violence, and had
been removed from Diana=s mother=s residence by police.  This testimony supported appellant=s testimony regarding the complainant=s violent character and thus Aadded significantly to [appellant=s] defense,@ a key component that was lacking in Ray. 
See id. at 836.  

The
concurring opinion in Ray underscores our conclusion by clarifying that
the erroneous exclusion of third-party testimony results in harm if it would
have been the only or primary evidence in support of an asserted
defense; such is not the case on this record.  See id. at 837 (Hervey,
J., concurring).  Further supporting our conclusion that appellant cannot show
harm is the fact that he was acquitted of the more serious charges of murder
and manslaughter, and instead was convicted of criminally negligent homicide.  See
Motilla, 78 S.W.3d at 355.

After
examining this record in its entirety, we are fairly assured that any error in
excluding third-party testimony that appellant had heard that the complainant
had threatened him and had killed a police officer or others in Mexico did not
influence the jury, or had but a slight effect, and therefore was harmless.  See
Tex. R. App. P. 44.2(b); Ray, 178 S.W.3d at 836; Cruz, 122 S.W.3d
at 315; see also Motilla, 78 S.W.3d at 355, 359-60.   

We
overrule appellant=s issue regarding exclusion of third-party testimony
establishing the complainant=s violent character.

Conclusion

The
trial court=s judgment is affirmed.

 

/s/        William
J. Boyce

Justice

 

Panel consists of
Justices Anderson, Guzman and Boyce.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]           The State=s brief does not predicate its waiver argument on the delay between
appellant=s initial trial objections and his later explanation
of those objections.  The State concedes in its brief that appellant=s Fifth Amendment contentions on appeal comport with
the corresponding objections made during the exchange involving Officer
Arnold.  The State contends that only appellant=s Fifth Amendment objections need to be addressed because appellant=s counsel made no reference to the Texas Constitution
or to article 38.38 when the objections were first lodged, or when appellant=s counsel elaborated on the objections during the noon
recess.





[2]           Appellant=s counsel re-urged his motion for mistrial following this question. 
The trial court treated counsel=s statement as
an objection and stated, AThe objection is overruled.@  Because the trial court treated counsel=s statement as an objection, we do too.





[3]           Before evidence of a complainant=s prior aggressive acts may be admitted, there first
must be some evidence of a violent or aggressive act by the complainant that
tends to raise the issue of self-defense and that the specific act may
explain.  Torres, 71 S.W.3d at 760.  We assume without deciding that
this predicate was established during the testimony of the State=s witnesses in the State=s case-in-chief.  See id. & n.7.