**Opinion issued December 6, 2018**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-17-00588-CR

———————————

**KEVIN RAMON MURPHY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1511333**

---

### MEMORANDUM OPINION

A jury convicted appellant, Kevin Ramon Murphy, of the felony offense of continuous sexual assault of a child and assessed his punishment at confinement for fifty years.[1]  In five issues, appellant argues that: (1) the State failed to provide

---

[1]  *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2018).

adequate notice of its intention to offer evidence under Texas Code of Criminal Procedure article 38.37, violating his due process rights; (2) the trial court abused its discretion in failing to hold a hearing on the article 38.37 evidence outside the presence of the jury; (3) the trial court abused its discretion in admitting the extraneous offense evidence without conducting a Rule 403 balancing test; (4) the State failed to provide adequate notice under Code of Criminal Procedure article 38.072; and (5) his trial counsel provided constitutionally ineffective assistance. We affirm.

## Background

Appellant met N.L., the complainant in this case, when she was twelve years old. N.L. was walking around her neighborhood, and appellant stopped to talk to her and offered to take her to buy some clothes and shoes. After that first encounter, they continued to spend time together and, eventually, appellant had sex with N.L., beginning when she was thirteen years old. In February 2016, when N.L. was fourteen, appellant, N.L., and another young girl, J.J., were all spending the night in a downtown motel. N.L. came to believe that appellant was making sexual advances toward J.J., became jealous and angry, and eventually retrieved a firearm and began shooting in appellant's direction. Minutes after the shooting, police detained N.L. and J.J. as they walked away from the motel. N.L. admitted to the shooting and told police that appellant, who was in his thirties, was her

boyfriend. This prompted an investigation by the child sex crimes unit of the Houston Police Department (HPD), and appellant was charged with continuous sexual assault of N.L., a child younger than fourteen years of age.

The first trial witness was N.L. N.L. testified regarding her relationship with appellant and the incident at the motel that brought the nature of their relationship to the attention of police. She testified that on February 1, 2016, appellant picked her up from her home and they spent some time "riding around" while appellant was "just selling his drugs." Appellant and N.L. then picked up N.L.'s friend, J.J., and drove into downtown Houston, where they spent the night at the Downtowner Inn. N.L. testified that she and appellant had been to that motel on several other occasions. On February 1, 2016, appellant and N.L. smoked a "Sherm square"[2] and then "kind of went to sleep," with N.L. in one bed and J.J. in the other. N.L. testified that she did not trust appellant, whom she considered her boyfriend, believing he "was going to do something with [J.J.]." N.L. later saw appellant in bed with J.J. and "heard noises," which upset her and led her to call J.J.'s mother "[t]o come get [J.J.] because something was about to go down." However, J.J.'s mother never arrived, and N.L. and appellant began fighting. N.L. testified that "[t]hings start[ed] getting physical," stating that she and appellant struck each other and appellant "took a long, orange speaker and he hit [her]" and made her bleed.

---

[2] N.L. testified that a "Sherm square" is a cigarette dipped in PCP that made her "feel like [she was] floating on clouds."

N.L. had "blanked out" and was in a "frustrated state" when she went out to appellant's vehicle, retrieved his gun, "cocked it back, and . . . started shooting" toward appellant.

Appellant ran away, and N.L. and J.J. left the Downtowner Inn on foot. This resulted in police finding N.L. and J.J. in the Third Ward area of Houston in the morning hours of February 2, 2016. N.L. was detained by HPD Officer Hall, who discovered that N.L. had a gun in her purse and that she had discharged the gun in appellant's direction. N.L. testified that she was "emotional" while speaking with police and that she told the officers about her relationship with appellant.

N.L. also testified about her relationship with appellant prior to February 1, 2016. She stated that she met appellant in the summer when she was twelve years old. N.L. was walking in the neighborhood, and appellant pulled up next to her in his truck and told her he would buy her some clothes and shoes. She got in the truck with him, and they went to purchase some clothing. After that day, N.L. and appellant saw each other "[b]asically every day." She testified that she and appellant had sex for the first time "a few weeks later" when they went to the Best Way Motel. N.L. testified that she had sex with appellant approximately three times a week, that they had both vaginal and oral sex, that they went to motels or to appellant's house when his wife was out working, and that she believed they were

in a dating relationship. She also testified that appellant bought her food and gave her pocket money during their relationship.

N.L. specifically testified that she and appellant had sex on her thirteenth birthday, which was November 12, 2014. N.L. also identified one occasion on which appellant, N.L., and a woman identified only as "Li'l Bit" had a threesome in a motel. She stated that appellant told her "that we was using [the other woman] for her school checks because she was going to HCC." Shortly after this incident, appellant was arrested and N.L. remained in contact with him via phone calls until he was released. N.L. stated that her relationship with appellant ended in February 2016.

The State asked N.L. whether appellant had had contact with any other girls while he was dating her, and she identified three other girls, including J.J. Appellant had told N.L. that he had sex with two of the girls, including J.J., whom N.L. believed had just turned thirteen at the time of trial.[3] N.L. also testified that appellant had "tried to pimp out" two of the girls, including J.J., and she stated that she had personally observed him have a physical relationship with J.J.

Records regarding phone calls that appellant made while he was being held in jail were also admitted into evidence, and appellant's wife, Ashley Murphy, testified regarding her communications with appellant concerning the events on

---

[3]     Appellant's trial counsel objected to N.L.'s testimony about what appellant told her on hearsay grounds, and the trial court overruled the objection.

February 2, 2016 and while he was in jail. Ashley stated that she and appellant had recently separated when he called her around 7:00 a.m. on February 2, 2016, saying that N.L. had "shot at him" and asking Ashley to come pick him up. Ashley was aware of N.L. because appellant had told her that N.L. was his cousin's friend. Ashley testified that she was concerned about appellant's relationship with N.L. because "[i]t just seem[ed] they were together a lot," but appellant told her that "he was helping [N.L.] out with his cousin." Ashley could not understand at the time of the February 2, 2016 phone call why N.L. would have shot at appellant. Ashley decided to call the police and then went to pick appellant up from the Downtowner Inn. He was crying, and when Ashley asked him why N.L. would shoot at him, he admitted to her that he had "been with" N.L. twice. Ashley elaborated that appellant meant that he had had sexual relations with N.L.

Ashley also testified that appellant again admitted to her, during recorded phone calls while he was in jail, that he had sex with N.L. Appellant told Ashley during recorded phone calls that he intended to "pimp" two other girls, and he asked Ashley to place a three-way call to N.L., which she did. During these calls, appellant made statements such as, "Why I got to be a pedophile?" and stated, regarding his relationship with N.L., "We ain't sleeping together, but we have had sex." Ashley asked him at one time, "What if I did that with a 13-year-old boy," and appellant responded, "Shut the fuck up."

HPD Detective M. Arrington interviewed appellant on February 3, 2016, regarding some of the events relevant to this case. In his interview with Detective Arrington, appellant acknowledged knowing N.L. but never admitted to any kind of sexual relationship with her. Officers Hall and McCloud testified regarding their interactions with N.L. Officer Hall testified that he responded to a service call for shots fired relating to the events at the Downtowner Inn and subsequently encountered N.L. Officer Hall stated that he detained her, that he found the firearm in her purse, and that N.L. admitted to him that she had gotten into an altercation with and fired the weapon at appellant, whom she identified to Officer Hall as "K.J." Officer McCloud testified regarding the outcry statement made by N.L. when the two spoke over the phone in May 2016. N.L. told Officer McCloud that appellant was her boyfriend and they had engaged in a sexual relationship beginning when she was thirteen years old. N.L. provided specific details to Officer McCloud regarding sexual activity between herself and appellant, including identifying information regarding the time or location of specific acts.

J.J. testified at trial, over appellant's objection that her testimony would elicit evidence of an overly-inflammatory extraneous offense. J.J. stated that she was fourteen years old at the time of trial. She testified that she knew N.L. through a mutual friend and that she, N.L., and appellant would "hang out" and "just ride

around." J.J. stated that N.L. and appellant had a "boyfriend/girlfriend type" relationship and that N.L. would act jealous when appellant paid attention to J.J.

Regarding the events on February 1, 2016, J.J. testified that she, N.L., and appellant were driving around, stating, "Me and [N.L.] was just chilling in the car while he [appellant] do what he do. We'll just sit in the car and smoke [weed] . . . [and] hang out." They all went together to the Downtowner Inn later that night. J.J. thought that N.L. was getting a room just for the two of them, but appellant stayed in the room too. J.J. testified that N.L. "was mad 'cause she was like he supposed to be gone." J.J. stated that, early the next morning, appellant "talked to her," by which she meant that appellant asked if she wanted to engage in sexual behavior with him, but she told him no and "he respect [sic] that he's not gonna, you know, he ain't force hisself or whatever."

J.J. testified that she and appellant had engaged in sexual behavior before. As she started testifying about a specific occasion, appellant's trial counsel objected, stating, "Your Honor, again, I'm going to object to any extraneouses that are not related to this incident that occurred on February." The trial court overruled the objection, and J.J. testified that, in the winter of 2015, she and another girl were riding around with appellant, got high, and then went to a motel. After she slept for a little while, appellant "kept asking" so she agreed to let him perform oral sex on her.

J.J. testified again that nothing sexual happened between herself and appellant on the night of February 1, 2016. However, she testified that N.L. was mad that appellant had talked to J.J. about engaging in sexual behavior. J.J. testified that eventually N.L. and appellant began fighting, that N.L. left the motel room first and went down to the car and retrieved the gun from the glove compartment or somewhere near the steering wheel of appellant's car, that N.L. started shooting at appellant, and that the girls then walked out of the motel and down the street. J.J. stated that they did not get too far away from the motel before the police stopped them and detained both girls.

J.J. also testified about the investigation that occurred after the events of February 2, 2016. She testified that she spoke with Claudia Gonzalez, the Children's Assessment Center (CAC) interviewer, and told her about the incident in 2015 in which appellant performed oral sex on her. She testified that Gonzalez was the first adult she told about that incident. J.J. also testified that she went to the hospital for an exam.

On cross-examination, J.J. testified that she never had sex in exchange for money, that during the time she was around appellant she never had sex with anyone else either, and that, aside from the one instance of oral sex in the winter of 2015, she never had sex with appellant. J.J. also testified that she never personally observed N.L. and appellant engage in sexual activity. Appellant's trial counsel

repeatedly asked questions regarding why neither J.J. nor N.L. was in school, despite the fact that they were school-aged. He also asked J.J. whether her mother knew where she was and what she was doing during the time that she spent with N.L. and appellant, and J.J. responded that she did not always listen to her mother and that her mother was not happy about the time she spent with appellant. Appellant's trial counsel also asked J.J. if she looked up to N.L. as someone who knew how to have a good time and who had street smarts, and J.J. agreed.

The State also presented evidence from outcry witnesses, including Gonzalez, who testified regarding the outcry that J.J. made to her. Gonzalez testified that J.J. was referred to the CAC by law enforcement and that she spoke to J.J. on February 4, 2016, when J.J. was twelve years old. Gonzalez testified that J.J. told her that appellant "had eaten her out one time at a hotel room" in December 2015. J.J. also provided a few additional details regarding the incident, and Gonzalez testified, "Based on my training and experience, I didn't have a reason to doubt what she was saying." Gonzalez also testified that she had not met with any other minor witnesses involved in the present case. However, Gonzalez also testified that it was not her job to figure out whether a child was telling her the truth; rather, it was "to allow them to give their statement."

At the close of the State's case, appellant's trial counsel moved for a directed verdict of acquittal, which the trial court denied. Trial counsel made a

closing argument on appellant's behalf. The jury convicted appellant of continuous sexual assault of N.L., and it assessed his punishment at fifty years' confinement. This appeal followed.

<b>Extraneous Offense Evidence</b>

In his first, second, and third issues, appellant complains of the trial court's admission of extraneous offense evidence—evidence of his alleged sexual assault of J.J.—under Code of Criminal Procedure article 38.37.

**A.      Article 38.37 and Extraneous Offense Evidence**

"[A] trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and we will uphold the trial court's ruling. *Id.*

Extraneous-offense evidence generally is not admissible to prove a person's character or his conformity therewith on a particular occasion. TEX. R. EVID. 404(b)(1). Code of Criminal Procedure article 38.37 provides an exception to the general rule prohibiting character conformity evidence in certain prosecutions, including, as here, prosecutions under Penal Code section 21.02 for continuous sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, §2(a) (West 2018). Article 38.37 provides:

[Sec. 2] (b) Notwithstanding Rules 404 and 405, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) [listing various offenses for sexual misconduct involving children] for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Sec. 2-a. Before evidence described by Section 2 may be introduced, the trial judge must:

(1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and

(2) conduct a hearing out of the presence of the jury for that purpose.

Sec. 3. The state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 1 or 2 not later than the 30th day before the date of the defendant's trial.

*Id.* art. 38.37, §2–3.

## B.    Relevant Facts

Following the lunch break on the second day of testimony, after N.L. and Ashley Murphy had already testified but before J.J. testified, the following hearing occurred outside the presence of the jury:

> [trial court]: Now the defense has an objection . . . to [J.J.] testifying about any extraneous offenses.  Obviously she's a witness to some of the incidents that we are here in trial on in the primary case; but it's my understanding that the State, through the outcry witness that we had and through [J.J.]'s testimony, is planning on offering an extraneous act of sexual misconduct.

[the State]: That is correct.

[counsel]: That is what I'm objecting to. I think it's an extraneous offense that's basically going to inflame the jury more than be helpful in the resolution of the case. So, I think the State should avoid getting into the extraneous indecency or possible sexual assault of [J.J.].

[trial court]: Because it would be inflammatory?

[counsel]: Well, it would be an extraneous offense being brought in, and I think the result is going to inflame the jury rather than to actually prove the case that the State is attempting to prove.

[trial court]: Your response?

[the State]: Under 38.37, we're allowed to get evidence in. It's already been brought in front of the jury as far as what [N.L.] saw, what [appellant] admitted to [N.L.] as far as sleeping with [J.J.]. Especially under 38.37 because this is a case [involving] an individual under the age of 17, the State is allowed statutorily to talk about extraneous [offenses] that involve other minors.

[trial court]: I think that relatively the statute is clear, that they're allowed to get into that type of evidence; and I think particularly here because it was all kind of wrapped up with that incident that happened at the hotel. I overrule your objection.

J.J. went on to testify before the jury regarding the nature of her relationship with N.L. and the time they would spend with appellant. She also described the events as they occurred on February 1 and 2, 2016. She stated that appellant did not pursue any sexual activity on February 1, 2016, after she told him no, but she testified that she and appellant had engaged in sexual behavior before. As she

started testifying about a specific occasion, appellant's trial counsel objected again. He stated, "Your Honor, again, I'm going to object to any extraneouses that are not related to this incident that occurred in February." The trial court overruled the objection, and J.J. testified that in the winter of 2015, appellant performed oral sex on her.

## C.     Preservation of Article 38.37 Complaints

In his first issue, appellant complains that the State failed to provide adequate notice of its intent to use extraneous offense evidence against him under article 38.37, violating his due process rights. In his second issue, he argues that the trial court abused its discretion by not holding a required hearing outside the presence of the jury to determine whether the evidence was sufficient that the jury could determine that appellant committed the extraneous offense beyond a reasonable doubt. The State, however, argues that appellant failed to preserve these complaints, and we agree.

Preservation of error is a systemic requirement on appeal. *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016); *Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014). For a party to preserve an issue for appeal, it must make a timely, specific objection to the alleged error and obtain a ruling. *See* TEX. R. APP. P. 33.1(a); *Alvarez v. State*, 491 S.W.3d 362, 367 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). The party must (1) tell the trial judge what the party

wants, (2) inform the judge why the party is entitled to that relief, and (3) be clear enough so that the judge understands the party's position in time for the judge to correct the error. *See Reyna v. State*, 168 S.W.3d 173, 177–78 (Tex. Crim. App. 2005); *Alvarez*, 491 S.W.3d at 367. To meet these requirements, the party must "state[] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A); *Alvarez*, 491 S.W.3d at 367–68.

Texas courts have held that points of error on appeal must correspond or comport with objections and arguments made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Wright*, 154 S.W.3d at 241; *see Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that issue was not preserved for appellate review because appellant's trial objection did not comport with issue he raised on appeal); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (same).

Here, appellant objected prior to J.J.'s testimony only on the ground that her testimony regarding appellant's sexual assault of her was an "extraneous offense that's basically going to inflame the jury more than be helpful in the resolution of

the case." The trial court clarified that appellant was complaining about J.J.'s testimony "[b]ecause it would be inflammatory." The State responded that, "[u]nder 38.37, we're allowed to get [the] evidence in." The State also pointed out that the jury had already heard N.L.'s testimony regarding the sexual relationship between appellant and J.J. The trial court stated, "I think that relatively the statute is clear, that they're allowed to get into that type of evidence; and I think particularly here because it was all kind of wrapped up with that incident that happened at the hotel. I overrule your objection."

Appellant's counsel never objected on the basis that he did not receive adequate notice pursuant to article 38.37. He did not seek a continuance or otherwise complain that he was surprised by the State's use of the evidence of appellant's sexual assault of J.J., nor did he complain that he was unprepared to defend appellant from the allegations. He failed to make a specific objection that would make the trial court aware that he received inadequate notice of the State's intent to use extraneous offense evidence pursuant to article 38.37. Accordingly, he failed to preserve for appellate review his complaint that the evidence was inadmissible due to lack of notice. *See* TEX. R. APP. P. 33.1(a); *Alvarez*, 491 S.W.3d at 367–68; *Belcher v. State*, 474 S.W.3d 840, 849–50 (Tex. App.—Tyler 2015, no pet.) (holding that defendant forfeited his complaint about notice of extraneous offenses required by article 38.37 because he did not raise complaint in

trial court); *Gregory v. State*, 56 S.W.3d 164, 176 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (holding that appellant failed to preserve complaint regarding adequacy of article 38.37 notice because he failed to object on that basis in trial court); *see also Hartson v. State*, 59 S.W.3d 780, 787–88 (Tex. App.—Texarkana 2001, no pet.) (complaint of lack of notice of intent to use prior bad act not preserved because no similar objection made at trial).

Likewise, appellant's counsel never objected on the basis that appellant was entitled to a hearing other than the one held by the trial court prior to J.J.'s testimony on the admissibility of evidence of appellant's sexual assault of J.J.  He did not ask for an article 38.37 hearing or object to the adequacy of the trial court's hearing.  Accordingly, he also failed to preserve for appellate review his complaint that the trial court erred in failing to hold an article 38.37 hearing.  *See* TEX. R. APP. P. 33.1(a); *Alvarez*, 491 S.W.3d at 367–68; *see also Carmichael v. State*, 505 S.W.3d 95, 103 (Tex. App.—San Antonio 2016, pet. ref'd) (concluding that article 38.37, section 2-a hearing requirement is subject to general requirement of preservation and is therefore subject to forfeiture).

Appellant argues that he preserved his complaints by objecting to the extraneous offense evidence on the basis that it was inflammatory.  He argues that "[a] general hearsay objection is sufficient to preserve all appellate claims under Article 38.072," and he cites the fact that "the Courts of Appeals have compared

the similarity in terms of preservation of error requirements between Article 38.072 and Article 38.37." Appellant relies on *Long v. State*, which acknowledged the "rule that an objection must be specific in order to inform the trial judge of the basis of the objection and to afford counsel the opportunity to remove the objection or supply other testimony" and held that the appellant preserved error by raising an objection on hearsay grounds, thus shifting the burden to the State "to show the evidence was admissible pursuant to either the provisions of Article 38.072 or to some other exception to the hearsay rule." 800 S.W.2d 545, 548 (Tex. Crim. App. 1990); *see also Carmichael*, 505 S.W.3d at 102–03 (noting similarities between articles 38.37 and 38.072 in concluding that failure to make specific objection to lack of adequate hearing is subject to general requirement of preservation and is therefore subject to forfeiture); *Taylor v. State*, 509 S.W.3d 468, 472–73 (Tex. App.—Austin 2015, pet. ref'd) (examining article 38.072's hearing requirement and holding that appellant waived any alleged error). This argument is unavailing for several reasons.

The cases appellant cites largely construe article 38.072, not article 38.37—the provision on which he relies here—and appellant did not make a general hearsay objection, as occurred in *Long*. All of these cases affirm the general principle that "an objection must be specific in order to inform the trial judge of the basis of the objection and to afford counsel the opportunity to remove the objection

or supply other testimony." *See, e.g.*, *Long*, 800 S.W.2d at 548. And, in both *Carmichael* and *Taylor*, the Courts of Appeals held that the appellant in those cases waived his complaint by failing to make a specific objection to the lack of a hearing or other inadequacy. *See Carmichael*, 505 S.W.3d at 102–03; *Taylor*, 509 S.W.3d at 472–73. Appellant has cited to no authority indicating that an objection under Rule of Evidence 403 to extraneous offense evidence for its inflammatory nature is sufficient to preserve complaints that the State or trial court failed to follow the statutory requirements of article 38.37, and we have found none. *See Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004) ("Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, . . . all other complaints whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a).").

We overrule appellant's first and second issues.

## D. Rule 403 Complaint

In his third issue, appellant argues that the trial court abused its discretion in admitting the extraneous offense evidence without conducting a balancing test under Rule 403. He objected, prior to J.J.'s testimony, that her testimony would "inflame the jury more than be helpful in the resolution of the case," implicating Rule 403. The trial court stated, "I think that relatively the statute is clear, that they're allowed to get into that type of evidence; and I think particularly here

because it was all kind of wrapped up with that incident that happened at the hotel. I overrule your objection."

Under Rule of Evidence 403, the court may exclude otherwise relevant and admissible evidence, including evidence that is admissible under article 38.37, if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403; *Alvarez*, 491 S.W.3d at 370. A trial court is afforded discretion in determining whether evidence is admissible under Rule 403. *Alvarez*, 491 S.W.3d at 370; *Burke v. State*, 371 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd). We presume that the probative value of this evidence outweighs any prejudicial effect. *Burke*, 371 S.W.3d at 257; *see Alvarez*, 491 S.W.3d at 370 (applying deferential standard "because trial courts are usually in the best position to make the call on whether certain evidence should be admitted or excluded") (citation omitted).

Furthermore, in performing a Rule 403 balancing test, the trial court is not required to "orally run through a list of factors on either side of the issue" or otherwise articulate its reasoning on the record. *See Hung Phuoc Le v. State*, 479 S.W.3d 462, 469 (Tex. App.—Houston [14th Dist.] 2015, no pet.). When the record reflects that the trial court entertained the objection and made a ruling on it, we presume that it properly performed a balancing test. *Id.*; *see also Santellan v.*

*State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997) ("Although appellant asserts that the trial court did not perform the balancing test, the trial court did not explicitly refuse to do the test, it simply overruled appellant's Rule 403 objections. We find nothing in the record to indicate that the trial court did not perform a balancing test, albeit a cursory one."); *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997) ("[A] judge is presumed to engage in the required balancing test once Rule 403 is invoked and we refuse to hold that the silence of the record implies otherwise."); *Hinojosa v. State*, 995 S.W.2d 955, 957 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("Because appellant objected on specific grounds and the trial court overruled the objection, we assume that the trial court applied Rule 403 and determined that the probative value of the evidence was not substantially outweighed by any danger of unfair prejudice.").

Appellant argues that the trial court abused its discretion in admitting the extraneous offense evidence without conducting a Rule 403 balancing test. However, the record reflects that the trial court entertained appellant's objection that the evidence would improperly inflame the jury, and it overruled appellant's objection. The trial court determined that J.J.'s testimony was particularly relevant here "because it was all kind of wrapped up with that incident that happened at the hotel." Nothing in the record indicates that the trial court refused to consider appellant's objection or otherwise refused to balance Rule 403 considerations.

Based on this record, appellant has not overcome the assumption that the trial court properly performed a balancing test. *See Hung Phuoc Le*, 479 S.W.3d at 469; *see also Williams*, 958 S.W.2d at 195 ("[A] judge is presumed to engage in the required balancing test once Rule 403 is invoked and we refuse to hold that the silence of the record implies otherwise.").

To the extent that appellant is also challenging the admissibility of J.J.'s testimony under Rule 403, appellant does not provide any reasoning or authority indicating that the evidence was overly prejudicial. On this record and in light of article 38.37, we cannot conclude that appellant has overcome the presumption that the probative nature of the evidence outweighed any prejudicial effect. *See Alvarez*, 491 S.W.3d at 370 (noting that Rule 403 does not allow "a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial" and rule "should be used sparingly," only when prejudicial effects substantially outweigh probative nature of evidence).

We overrule appellant's third issue.

## Outcry Testimony

In his fourth issue, appellant argues that the State failed to provide adequate notice of an outcry witness's testimony under Code of Criminal Procedure article 38.072 and the trial court abused its discretion in admitting extraneous hearsay testimony under article 38.072. Specifically, he argues that the State did not

provide notice that Claudia Gonzalez was the outcry witness who would testify regarding J.J.'s outcry of abuse, as required under article 38.072, section 2(b)(1). He further argues that the trial court abused its discretion in admitting Gonzalez's outcry testimony for an extraneous matter under article 38.072. Again, the State argues that appellant failed to preserve this complaint for consideration on appeal and that, even if he had, any error was harmless.

## A. Standard of Review

Texas Code of Criminal Procedure article 38.072, the outcry statute, provides that a child abuse victim's statement to another is not inadmissible hearsay if the statement describes the alleged offense and the person to whom the statement is made is at least 18 years old and is the first person the child informed about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2018).

Article 38.072, section 2 provides:

(a) This article applies only to statements that:

    (1) describe:

        (A) the alleged offense; or

        (B) if the statement is offered during the punishment phase of the proceeding, a crime, wrong, or act other than the alleged offense that is:

            (i) described by Section 1;

(ii) allegedly committed by the defendant against the child who is the victim of the offense or another child younger than 14 years of age; and

(iii) otherwise admissible as evidence under Article 38.37, Rule 404 or 405, Texas Rules of Evidence, or another law or rule of evidence of this state;

(2) were made by the child or person with a disability against whom the charged offense or extraneous crime, wrong, or act was allegedly committed; and

(3) were made to the first person, 18 years of age or older, other than the defendant, to whom the child or person with a disability made a statement about the offense or extraneous crime, wrong, or act.

(b) A statement that meets the requirements of Subsection (a) is not inadmissible because of the hearsay rule if:

(1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

(A) notifies the adverse party of its intention to do so;

(B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and

(C) provides the adverse party with a written summary of the statement;

(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

(3) the child or person with a disability testifies or is available to testify at the proceeding in court or in any other manner provided by law.

*Id.*

Thus, article 38.072 allows statements that might otherwise be inadmissible hearsay statements—here, statements that "were made by the child . . . against whom the . . . extraneous crime . . . was allegedly committed"—provided that the witness testifying to the statement is "the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the . . . extraneous crime." *Id.* art. 38.072, § 2(a)(2)–(3). The State is required to provide timely notice of its intent to use outcry testimony, including the name of the outcry witness and a written summary of the witness's statement. *Id.* art. 38.072, § 2(b)(1).

Courts have also held that complaints under article 38.072 must be preserved by a specific objection. "When the State offers an out-of-court statement pursuant to article 38.072 of the Texas Code of Criminal Procedure, a defendant must object to the statement to preserve error for appellate review." *Rosas v. State*, 76 S.W.3d 771, 776–77 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Holland v. State*, 802 S.W.2d 696, 699–700 (Tex. Crim. App. 1991)). Failure to object waives the complaint on appeal. *Id.* at 777; *see also Taylor*, 509 S.W.3d at 472–73 (holding that appellant waived any alleged error regarding admission of evidence concerning outcry statements because he made no objection before the trial court).

**B.      Relevant Facts**

Following appellant's indictment, the State filed pre-trial notice of its intention to use a child abuse victim's hearsay statement, indicating that, pursuant to Code of Criminal Procedure 38.072, N.L.'s hearsay statements of abuse would be offered through the HPD officers who responded to the shooting call and who investigated N.L.'s allegations of a relationship with appellant—Officers Hall and McCloud, respectively. The State provided a summary of N.L.'s statement as including her statement that appellant "was having sex with her friend [J.J.] while she laid in the other bed at the Downtowner Inn Motel," leading up to the shooting that brought the nature of N.L.'s relationship with appellant to the attention of police.

Appellant then moved for a "hearing outside the presence of the jury on [an] outcry statement of [a] child pursuant to [Code of Criminal Procedure] art. 38.072," based on the State's notice of "its intent to use the outcry hearsay statement of the Complainant, N.L." The trial court granted this motion.

After N.L. and Ashley Murphy testified on the first day of the trial, the trial court discussed the outcry hearing that was scheduled for the next morning, asking, "Is it just one witness?" The State responded, "There are going to be a couple more now, Judge. So total State expects for there to be three witnesses."

The next morning, the trial court conducted a hearing regarding the reliability of an outcry witness, Claudia Gonzalez.[4] Gonzalez was an interviewer with the Children's Assessment Center who was assigned to interview J.J. on February 4, 2016. J.J. told Gonzalez that she was twelve years old at the time of the interview, and J.J. initially thought she was there to speak to Gonzalez about the shooting incident that had occurred on February 2, 2016. During this interview, J.J. "disclosed sexual abuse by [appellant], and described that he ate her out one time at a motel room." J.J. indicated that this occurred in December 2015.

Appellant's trial counsel cross-examined Gonzalez and established that Gonzalez had not interviewed the complainant in the case, N.L., and he further established that J.J. did not provide any statements to Gonzalez regarding appellant's conduct toward N.L.

The trial court gave both sides an opportunity to present argument on the outcry issue. Appellant's counsel did not object that he had not received proper notice of the hearing pursuant to Code of Criminal Procedure article 38.072, nor did he object on the basis that article 38.072 did not apply to Gonzalez or in any other way refer to the requirements of article 38.072. Instead, the following interchange occurred:

---

[4] The State also presented Officers Hall and McCloud as outcry witnesses addressing N.L.'s statement of abuse, but appellant does not challenge the trial court's ruling regarding those witnesses.

[counsel]: Judge, on Ms. Gonzalez, I think that only refers to [J.J.], and that certainly would be an extraneous that would be brought into this case, which we would object to as being an extraneous offense.

[trial court]: But whether or not it's admissible is a different issue. We're talking about whether or not the outcry was reliable based on the time and circumstances, whether or not she is the appropriate outcry witness.

[counsel]: As to [J.J.], I don't have any objection.

[trial court]: Okay. We'll take up whether or not it's admissible at a later time.

When J.J. subsequently testified on the record, appellant objected to the admission of evidence of an extraneous offense that would unduly inflame the jury—an objection which the trial court overruled, as discussed above. When Gonzalez then testified regarding J.J.'s outcry of abuse to her, appellant did not object on any basis.

## C.    Analysis

Appellant argues on appeal that the State's article 38.072 notice was inadequate because it did not list Gonzalez. However, appellant failed to make any objections that comport with the complaints that he now raises on appeal—that he did not receive adequate notice under article 38.072 or that Gonzalez's testimony was not admissible pursuant to article 38.072. *See* TEX. R. APP. P. 33.1(a); *Resendiz*, 112 S.W.3d at 547; *see also Bargas v. State*, 252 S.W.3d 876, 895 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding that appellant failed to

preserve complaint about notice provided by State pursuant to article 38.072 by failing to object on that basis in trial court); *Sharp v. State*, 210 S.W.3d 835, 839 (Tex. App.—Amarillo 2006, no pet.) (holding that appellant failed to preserve his complaint that State failed to give him notice required by article 38.072).

Furthermore, when the trial court heard appellant's objection that Gonzalez's testimony went to an extraneous offense, it clarified that the issue before the court at the outcry witness hearing was "whether or not the outcry was reliable based on the time and circumstances, whether or not she is the appropriate outcry witness." Appellant's counsel affirmatively stated, "As to [J.J.], I don't have any objection." The trial court stated that they could address admissibility later, but when Gonzalez testified appellant never objected to her testimony on the ground that it was inadmissible. He never made any objection, either at the outcry hearing or when Gonzalez's testimony was presented to the jury, that implicated the provisions of article 38.072. Accordingly, we conclude that he waived those complaints. *See See* TEX. R. APP. P. 33.1(a); *Resendiz*, 112 S.W.3d at 547.

Appellant, citing *Long*, argues that, by his filing his motion for an article 38.072 hearing, the burden shifted to the State to show that it had met all the requirements of article 38.072. *See* 800 S.W.3d at 548. However, *Long* is factually distinguishable. In *Long*, the Court of Criminal Appeals addressed whether a hearsay objection was sufficient to preserve the defendant's complaint

regarding evidence purportedly admitted pursuant to article 38.072. *Id.* at 546–47. The court concluded that the hearsay objection preserved error and put the burden on the State "to show the evidence was admissible pursuant to either the provisions of Article 38.072 or to some other exception to the hearsay rule." *Id.* at 548. In reaching this conclusion, the court "acknowledge[d] our rule that an objection must be specific in order to inform the trial judge of the basis of the objection and to afford counsel the opportunity to remove the objection or supply other testimony." *Id.*

Here, appellant did not make a hearsay objection. Unlike in *Long*, the record here demonstrates that the State did file notice under article 38.072 and appellant's motion for an outcry witness hearing was granted. The State presented evidence from multiple witnesses demonstrating that the evidence was admissible pursuant to article 38.072. Appellant had an opportunity to question the witnesses and to provide legal argument. He never raised any objections pertaining to notice under the statute, he never expressed surprise at Gonzalez's appearance during the hearing, and he did not seek a continuance. Appellant has not identified any authority indicating that this complaint should fall outside the general rule, acknowledged in *Long* and many cases since then, that "an objection must be specific in order to inform the trial judge of the basis of the objection and to afford

counsel the opportunity to remove the objection or supply other testimony." *Id.*; *see also* TEX. R. APP. P. 33.1(a); *Resendiz*, 112 S.W.3d at 547.

We overrule appellant's fourth issue.

## Ineffective Assistance of Counsel

In his fifth issue, appellant contends that his trial counsel provided ineffective assistance of counsel. He asserts that his trial counsel was ineffective for failing to object to extraneous bad acts and for failing to preserve error for appeal. He further argues that the "totality of trial counsel's representation undermines the court's confidence in the conviction."

## A. Standard of Review

We evaluate ineffective assistance claims under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). To prevail on a claim of ineffective assistance, an appellant must show that (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 692, 104 S. Ct. at 2067. An appellant must prove deficient performance and sufficient prejudice by a preponderance of the evidence. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (citing *Salinas v. State*, 163 S.W.3d 743, 740 (Tex. Crim. App. 2005)).

In reviewing ineffective-assistance claims, we begin with a strong presumption that counsel's behavior fell within the range of reasonable professional conduct. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). "[I]n the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (internal quotations omitted). To overcome this presumption, "allegation[s] of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

When the record is silent regarding counsel's strategy, we will not find deficient performance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Garcia*, 57 S.W.3d at 440. Consequently, the record on direct appeal will ordinarily not give reviewing courts enough information to evaluate the merits of an ineffectiveness claim. *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005).

**B.    Analysis**

Appellant identifies several instances as demonstrating that his trial counsel was constitutionally ineffective.  He asserts that trial counsel was ineffective for failing to object to numerous extraneous and prejudicial matters, including N.L.'s

testimony that appellant spent time "just selling his drugs" and evidence that appellant used drugs with N.L. and J.J.; N.L.'s testimony that appellant was involved in prostitution; evidence of his sexual activity with other minors; and evidence of his possession of a firearm. He also argues that his counsel was ineffective for failing to make objections that would have preserved his complaints regarding articles 38.37 or 38.072 for review on appeal.

Appellant argues that extraneous offenses are inherently prejudicial, and when counsel fails to object to numerous extraneous and prejudicial matters, counsel may be ineffective, citing *Brown v. State*, 974 S.W.2d 289 (Tex. App.—San Antonio 1998, pet. ref'd). However, the record is silent as to trial counsel's strategy in failing to object on these grounds, and none of the identified failures are "so outrageous that no competent attorney would have engaged in [them]." *See Garcia*, 57 S.W.3d at 440. Many of the extraneous offenses that appellant argues his trial counsel should have objected to were likely admissible. *See West v. State*, 474 S.W.3d 785, 792 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that defense counsel's failure to object to evidence that was likely admissible did not rise to level of deficient performance).

The evidence of appellant's sexual assault of J.J. and the passing mention of prostitution of minors were likely admissible under article 38.37 or for some purpose other than showing that appellant was acting in conformity with his

character. *See, e.g.*, TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2; TEX. R. EVID. 404(b)(2) (providing that evidence of crimes, wrongs, or other bad acts may be admissible for purpose other than to prove character or that he acted in accordance with character, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"); *see also Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (explaining that evidence of another crime, wrong, or act may be admissible as same-transaction contextual evidence where several crimes are intermixed, or blended with one another, or connected so that they form indivisible criminal transaction, and full proof by testimony of any one of them cannot be given without showing others). Appellant has failed to demonstrate that, if his trial counsel had objected, the trial court would have erred in overruling the objection. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (appellant must demonstrate that if counsel had objected on indicated grounds, trial court would have erred in overruling objection).

Furthermore, even the failure to object to inadmissible evidence may be a sound trial strategy. *See West*, 474 S.W.3d at 791–92; *Haagensen v. State*, 346 S.W.3d 758, 766 (Tex. App.—Texarkana 2011, no pet.). Several of the extraneous offenses or bad acts—such as the references to appellant selling drugs, smoking drugs, or possessing a firearm—were mentioned in passing and were not dwelt

upon by the State; thus, counsel might have believed that it would be better not to draw attention to those acts by objecting to them. *See Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that counsel "may have . . . decided to withhold objections to avoid drawing unwanted attention to a particular issue, or to prevent the impression that she was objecting at every opportunity as a means of stonewalling evidence"); *Haagensen*, 346 S.W.3d at 766 ("Trial counsel's strategy in not objecting may have been an effort to build rapport with the jury and prevent the jury from concluding he was attempting to hide information from them."). The record does not provide any insight into defense counsel's true reasoning, and so we will defer to counsel's decisions. *See Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). Appellant has failed to overcome the strong presumption that counsel performed within reasonable standards. *See Thompson*, 9 S.W.3d at 813.

Finally, appellant argues that the totality of his trial counsel's representation undermined confidence in his conviction, citing *Brown*, in which the court held that counsel was ineffective for failing to properly voir dire jurors, eliciting extraneous offenses, making no effort to object to inadmissible evidence, admitting his own lack of preparation, and misstating the burden of proof. *See* 974 S.W.3d at 294. This case is materially different from *Brown*. Here, appellant's trial counsel

participated appropriately in voir dire, filed motions, made objections to evidence, cross-examined witnesses, and presented legal arguments on appellant's behalf.

Appellant's argument that counsel's performance undermined confidence in the outcome of his trial is essentially an argument that he has proven sufficient harm under the *Strickland* standard for proving an ineffective-assistance claim. *See Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012) (holding that, in evaluating ineffective-assistance claims, courts must examine "the totality of the circumstances as they existed at trial," and appellant must show both deficient performance and "a reasonable probability"—i.e., "one sufficient to undermine confidence in the outcome"—that, but for counsel's unprofessional errors, result of proceedings would have been different). We have already determined that the specific alleged failures do not support a claim of ineffectiveness.

Even to the extent that appellant's trial counsel's failure to object in the instances or on the particular grounds identified cannot be explained as trial strategy and fell below an objective standard of reasonableness, without a showing of a reasonably probability that the result of the proceedings would have been different, we cannot conclude that appellant was prejudiced by his counsel's inaction. *See Thompson*, 9 S.W.3d at 813. Appellant's trial counsel did object to the admission of extraneous offense evidence on several occasions, and the objections were overruled. But even without considering the complained-of

evidence—the passing statements regarding drugs and weapons, J.J.'s testimony, and Gonzalez's outcry testimony—the State nevertheless presented a compelling and thorough case against appellant. N.L.'s testimony, the testimony of N.L.'s outcry witness Officer McCloud, the testimony of Ashley Murphy, and recordings of appellant's conversations that occurred over the jailhouse phone line were sufficient to establish the elements of the offense for which appellant was convicted. *See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2018).

We cannot say that any failure of counsel materially impacted the outcome of appellant's case. *See Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067; *Flores*, 387 S.W.3d at 633–34.

We overrule appellant's fifth issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).